**Harold Henry Augusta NETTLES, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 18S00–8905–CR–379.

Supreme Court of Indiana.

Jan. 29, 1991.

Geoffrey A. Rivers, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of two counts of Murder, for which he received sentences of sixty (60) years on each charge, the sentences to run consecutively.

The facts supporting the verdict of the jury are as follows: The victims in this case were Brenda Freeman and her five-year-old son, Michael Tyrone Carmichael. They lived with Syrona Lynn Haines. Prior to the killings, appellant and Haines had been having a relationship, and appellant had spent a number of nights at the apartment. Haines testified she last saw the victims alive when she left the apartment on December 26, 1987.

On the evening of December 28, 1987, appellant was seen leaving the apartment. Haines returned home about 3:00 p.m. on December 29 and discovered the bodies of the victims. She immediately called police. She testified that appellant often wore a maroon sweat shirt with "Harvard" on the front. Several other witnesses also testified that appellant had been seen wearing such a sweat shirt.

On the day the bodies were discovered, appellant was seen running through nearby yards wearing the sweat shirt. Daisy Bonner testified that she saw appellant take off the sweat shirt and drop it in Elizabeth Isom's yard. Elizabeth's son, Virgil Isom, retrieved the sweat shirt and it was turned over to police. Blood was found on the sweat shirt which was inconsistent in type with appellant's or the child's blood but was consistent with the mother's blood. Tests also revealed that there was hair on the sweat shirt which matched appellant's hair as well as hair matching that of both victims.

At the scene of the murders, bloodstains were found that were inconsistent with the two victims' blood but which were consistent with appellant's blood. Police also obtained a bloody fingerprint from the kitchen which matched appellant's prints with seven points of comparisons. Police also found a Salem cigarette butt in the apartment, a brand which appellant was known to smoke.

Dr. James Baldwin performed autopsies on the victims and stated that the child had four stab wounds in the back, one of which went through his heart. His body contained a total of sixteen stab wounds. As to the mother's injuries, Dr. Baldwin stated there were multiple gaping lacerations on the victim's scalp and face. Her face alone contained approximately forty separate wounds. She sustained blunt-instrument injuries which probably were inflicted by a broken steam iron that was found nearby. She also sustained multiple stab wounds to the chest, back, arms, and hands including at least seventy separate punctures of her chest. Comparison of the wounds with instruments found in the apartment showed that the wounds matched knives and a meat fork.

At the time of his arrest, appellant had multiple cuts on his hands. These cuts were photographed and Dr. John E. Pless testified that some cuts on appellant's hands were inflicted by a serrated knife. Such a knife was found at the crime scene. An H-shaped wound on appellant's hand matched the handle of the broken iron.

Appellant claims the trial court erred in denying his motion to suppress numerous items of the State's evidence including blood and hair identification test results the samples of which were either destroyed in the testing process or not preserved by the State. He combines this argument with his claim of error in the trial court's denial of his motion to dismiss the charges against him because of the State's intentional or negligent destruction of material evidence.

On January 14, 1988, appellant's attorneys filed a motion to produce. The State responded by providing existing scientific reports and informed appellant's attorneys that the physical exhibits were available for viewing. On March 30, 1988, appellant filed a motion asking for "copies of ... all fingerprints and blood analysis...." He followed this with a request for funds to hire an expert on blood analysis. On July 14, 1988, appellant filed a motion to require the State to provide evidence to his experts. After a hearing on the matter, the trial court denied the request, ruling it had no authority to order the State to turn physical evidence over to the defendant. The court did require the State to allow appellant's expert to examine the evidence when suitable security arrangements were made.

On August 15, 1988, defense counsel moved to withdraw. Two weeks later, counsel moved for sanctions against the State for violation of the orders to produce. Both motions were based upon the State's refusal to turn over physical evidence to appellant. Another hearing was held on September 19, 1988 in which the trial judge reiterated his ruling that he would not order the State to turn over physical evidence unless arrangements could be made for security of the State's evidence. Subsequently, appellant's counsel complied, and their expert was permitted to examine the evidence.

Appellant then filed a motion to suppress the evidence based upon his claim of the State's delay and bad faith. His motion to dismiss filed a week later was based on the same grounds.

As to appellant's allegation of destruction of evidence by the State, the only evidence of intentional destruction was explained by the examining technicians who stated that it was necessary to destroy portions of items such as hair and blood to conduct the testing. The balance of appellant's claim is supported by the fact that the State neglected to refrigerate blood samples, and by the time appellant's counsel and the State resolved their differences on custody of the objects, the technician employed by appellant stated that the blood samples were too old and in such a state of deterioration that he could not adequately test them.

The trial court had the inherent power to guide and control the discovery proceedings. *Norris v. State* (1987), Ind., 516 N.E.2d 1068; *Spears v. State* (1980), 272 Ind. 634, 401 N.E.2d 331, *modified on other grounds on reh'g*, 272 Ind. 647, 403 N.E.2d 828. The trial judge was correct in his observation that he should not order State's evidence turned over to appellant without provision being made for the security of the evidence. It is true that when a court finds that a prosecutor's noncompliance with discovery orders is grossly misleading or in bad faith, he may exclude the State's evidence. *Sparks v. State* (1979), 271 Ind. 419, 393 N.E.2d 151.

However, in the case at bar, appellant's counsel was furnished with the test results immediately upon request. It was not until later that appellant's counsel moved for funds with which to employ an expert and moved the court to order the State to turn over its physical evidence for independent testing. This was denied by the court until reasonable security could be provided for the State's evidence. Any testing which could be done was extremely limited due to the passage of time. While this is unfortunate and the State might be sanctioned for failure to refrigerate blood samples, this in no way invalidates the testing which previously had been done by the State Police Laboratory on the hair and blood samples.

In *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281, a similar situation was presented. There the Supreme Court held the State's failure to preserve potentially useful evidence by neglecting to refrigerate semen-stained clothing did not constitute denial of due process where there was no showing of bad faith on the part of the police. In the case at bar, we see nothing in this record to indicate bad faith in the failure to preserve the specimens of human blood. The results of all tests conducted by the police were made available to appellant, and there is no indication or contention that those tests were conducted improperly or fraudulently.

The facts in this case, which are relied upon by appellant in his argument, were placed before the jury and raised a question as to the credibility of the State's evidence. This was a matter to be weighed by the jury and it was their prerogative to give such weight as they saw fit to the State's evidence.

Appellant claims the trial court erred in denying his motion to suppress the evidence concerning hair, blood, *etc.* taken from appellant during his incarceration. He claims the allegations included in the search warrant were not sufficient to establish probable cause to believe that he had committed a felony. He claims the warrant for his arrest also was deficient in facts to establish probable cause to believe that he had committed a felony. However, appellant sets out the State's affidavit which was filed to support their search warrant in an attempt to support his contention. A reading of that affidavit leads to the conclusion that ample evidence was set out to establish probable cause that the taking of hair and blood samples from appellant was justified in light of the information then available to police.

A similar situation existed regarding the warrant for appellant's arrest. Preliminary police investigation had disclosed many of the facts recited at the beginning of this opinion. There can be no doubt that these facts were ample to provide probable cause for the arrest of appellant in the instant case. *See Merritt v. State* (1986), Ind., 488 N.E.2d 340; *Battle v. State* (1981), 275 Ind. 70, 415 N.E.2d 39. In dealing with probable cause for making an arrest, a court deals with probabilities which are the factual and practical considerations of everyday life upon which prudent and reasonable men, not legal technicians, act. *Draper v. United States* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. We see no lack of probable cause in either the arrest of appellant or in the search warrant issued for the taking of hair and blood samples from him.

Appellant claims the trial court erred in overruling his objection to the State's use of peremptory challenges to exclude blacks from the jury. Toward the end of the *voir dire* of the jury, the State

used a peremptory challenge to exclude Anthony Farrell Coats, a black man. Norman Irelan of the Muncie Police Department testified that the State did so because Coats had testified in a previous trial on an unrelated cause and that his testimony was not consistent with other statements and indicated he believed the police were wrong in that case.

Although appellant's counsel disputed Officer Irelan's recollection of Coats' former testimony, the State's race-neutral reason need not rise to the level of a challenge for cause. *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. Moreover, although appellant is black and was tried by an all-white jury as a result of the peremptory challenge of Coats, there is nothing in this record to indicate that the State systematically removed blacks from the jury or that the peremptory challenge of Coats was based upon the fact he was black rather than upon his perceived bias and prejudice against the State. Under the circumstances, we can see no reversible error arising from this situation. *See Batson, supra; Minniefield v. State* (1989), Ind., 539 N.E.2d 464; *Stamps v. State* (1987), Ind., 515 N.E.2d 507.

■ Appellant contends the trial court erred in overruling his objection to the showing of a videotape of the crime scene with an audio portion which was created at a time other than during the filming of the crime scene and thus was not relevant. However, appellant has not included the videotape in this record and does not favor us with a statement as to the specific nature of the so-called improper comments nor more than a rudimentary explanation of the content of the tape. Such bare assertion of error which is not disclosed by the record is not available for our review. *Tabor v. State* (1984), Ind., 461 N.E.2d 118.

■ Appellant claims the trial court erred in overruling his objection to the testimony of Dr. Brent Caudill, M.D. concerning the evidence obtained by the testing of hair and blood samples which were by necessity destroyed in the process of testing. Dr. Caudill testified concerning the comparison of the samples taken from appellant

pursuant to the search warrant with those which had been found at or near the scene of the crime and which by necessity had been destroyed in the testing process.

For the reasons stated above, we see no merit to the contention that the State is precluded from referring to tests which by their very nature destroy the subject. Obviously this result obtains in many facets of police laboratory testing, the nature of which is to ascertain the characteristics of the tested object. The trial court did not err in permitting such a comparison.

■ Appellant contends the trial court erred in overruling his objections to the various photographs of the victims which were introduced into evidence. There is no question that gruesome photographs which add nothing to the State's case and are introduced for the obvious purpose of exciting the emotions of the jury are improper. *Kiefer v. State* (1958), 239 Ind. 103, 153 N.E.2d 899. However, where photographs are demonstrative of testimony which describes the nature of the wounds and the number of wounds inflicted upon the victim, the use of the photographs to explain more clearly to the jury the conclusions of the witness is not error. *See VanOrden v. State* (1984), Ind., 469 N.E.2d 1153, *cert. denied*, 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851; *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228.

Appellant claims the trial court erred in overruling his objection to the testimony of Janis Fair and J.C. Romack. Each of these witnesses testified to the taking and examination of the hair and blood samples previously discussed in this opinion. Fair was a former employee and Romack was a civilian employee of the Indiana State Police laboratory. For the reasons stated above, we see no error in permitting either of these witnesses to testify concerning results of the tests conducted in this case.

■ Appellant contends the trial court erred in refusing to give his Tendered Instructions Nos. 4, 6, and 9. In reviewing the questioned refusal of an instruction, this Court must consider whether the tendered instruction is a correct statement of

the law, whether there is evidence to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions given. *Smith v. State* (1984), Ind., 468 N.E.2d 512.

Appellant's Tendered Instruction No. 4 purported to instruct the jury that it might use inferences to find guilt but that if there is a conflicting inference it should be resolved in favor of appellant and that inferences must amount to proof beyond a reasonable doubt. The final instructions which were given by the court covered the resolution of conflicting evidence in favor of the defendant. The court gave an instruction on reasonable doubt and also an instruction concerning the definition of an inference. Thus we see no error in the trial court's refusal to give appellant's Tendered Instruction No. 4.

■ Appellant's Tendered Instruction No. 6 purported to inform the jury that if they believed the police either "destroyed and/or allowed to deteriorate evidence" then the jury could infer that the evidence would have been unfavorable to the State and beneficial to the accused. As previously discussed in this case, we see nothing in this record to justify the conclusion that the police engaged in any willful conduct in destroying evidence. As stated in *Youngblood, supra,* negligent handling of evidence will not be grounds for reversal unless it can be demonstrated that police acted deliberately. The trial court was correct in refusing to give appellant's Tendered Instruction No. 6.

■ Appellant's Tendered Instruction No. 9 named six persons whom appellant contends should have been called as witnesses by the State but were not. It also listed other persons who should have been called as "shoe size experts" which the State did not call. He purported to instruct the jury that the State's failure to call such witnesses "may give rise to an inference that his/her testimony would be unfavorable to it." This instruction is an incorrect statement of the evidence in this case. Although the persons named by appellant played some part or another in the investigation of the crime, police certainly are not required to call every conceivable witness in the prosecution of a case.

In his brief, appellant sets out that these witnesses successfully evaded his subpoenas and were not available to him. There is nothing in appellant's brief to indicate that he enlisted the aid of the State in calling these witnesses nor is there any allegation as to what any one of these witnesses might have testified had they been called. From the record before us, one can only conclude the named witnesses were not called simply because the State saw no need for their testimony. Under the circumstances of this case, we see no error in refusing to give appellant's Tendered Instruction No. 9.

■ Appellant claims the verdict is contrary to the facts and the law. Here, he argues that the evidence against him is purely circumstantial and compares the testimony of the various witnesses and points out discrepancies therein. These are all matters which were presented to the jury and fell within the exclusive prerogative of the jury to weigh. This Court will not usurp that prerogative. *Harvey v. State* (1989), Ind., 542 N.E.2d 198.

■ Appellant claims the trial court erred in imposing an executed sentence totalling one hundred twenty (120) years. He claims the sentences are not proportionate to the nature of the offense and thus are a violation of art. 1, § 16 of the Indiana Constitution. He also claims the trial court improperly weighed and applied mitigating and aggravating circumstances pursuant to Ind.Code § 35–38–1–7 (repealed 1990; *now see* § 35–38–1–7.1).

■ The only mitigating circumstance found by the trial court was that the imprisonment of appellant would be a hardship upon his dependents. The court, however, found numerous aggravating factors including appellant's history of criminal activity and the fact he had only recently been released from prison. The court also noted the particularly heinous nature of the mutilation killings of the victims, including the fact that one of the victims was a

five-year-old child. Under the facts of this case, we cannot say the trial court abused its discretion in ordering two sixty (60) year sentences to be served consecutively.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.