**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 28 2014, 8:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DOUGLAS K. MAWHORR**
Public Defender's Office
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALONZO GOLSTON WILLIAMS III, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1307-CR-624 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Thomas A. Cannon, Jr., Judge
Cause No. 18C05-1104-FD-41

**February 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Alonzo Golston Williams III appeals his conviction for intimidation, as a Class D felony, following a jury trial. Williams raises two issues for our review, which we consolidate and restate as whether the trial court abused its discretion when it denied his proposed jury instruction and whether the State denied him his right to due process when it failed to preserve potentially useful evidence. We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 13, 2011, Williams was incarcerated in the Delaware County Jail. Corporal Robert L. Brooks of the Delaware County Sheriff's Office was working inside the jail that day, and he observed "pornography pictures" on the wall of Williams' cell. Transcript at 230. Having pictures of any kind on the walls of a cell is against the rules of the jail, and Corporal Brooks instructed Williams to remove the pictures. Later that day, Corporal Brooks returned to Williams' cell and observed the pictures still on the wall. Corporal Brooks again instructed Williams to remove the pictures, but Williams responded, "fuck you, I'm not taking them down." Id. at 138.

Corporal Brooks then removed Williams from his cell, placed Williams in handcuffs, and proceeded to remove the pictures from Williams' wall. Correctional Officer John Taylor arrived to assist Corporal Brooks in searching the rest of Williams' cell for contraband. During the search, Williams "kept yelling" and "cussing" and so, pursuant to the jail's policies, the officers removed Williams to the segregation unit of the jail. Id. at 140. En route, Jeremy Dye, an administrative assistant for the Sheriff's

2

Office, overheard Williams saying that "he was gonna . . . get or kill . . . Officer Taylor and Officer Brooks." Id. at 193.

Corporal Brooks placed Williams inside a segregation cell. Williams asked for medical attention, but then proceeded to tell Corporal Brooks that "when he see[s] me on the street he [i]s going to kill me" and that Williams "hoped [Corporal Brooks'] mother and . . . kids die." Id. at 140. Williams told Officer Taylor that Officer Taylor "was dead when [Williams] gets out." Id. at 172. And Williams spit at Officer Taylor, though he missed. Williams then refused to allow a responding nurse into his cell, and she did not even get to look at him.

On April 18, the State charged Williams with intimidation, as a Class D felony, and attempted battery by body waste, as a Class D felony. At his ensuing jury trial, Williams argued to the jury that, although the jail had a video surveillance system, "I bet you don't see any video today. . . . [W]hy is that? Why isn't there any video?" Id. at 132-33. Williams then asked Corporal Brooks and Officer Taylor if they were familiar with the jail's surveillance system. Corporal Brooks testified that the surveillance cameras captured only movement and not sound. When asked if he attempted to review or preserve the video from the incident, Corporal Brooks testified:

> A    No I did not, because we simply escorted him to that segregation [cell,] which is routine, and took the handcuffs off of him and tried to exit the cell.

> * * *

> Q    Did you think about it at all?

> A    No I did not.

3

Q       Did you do anything to destroy the tape?

A       No I didn't.

Id. at 145-46.  Officer Taylor likewise testified that, in light of the routine nature of the events, he did not "think to even pull the tape, or to look at it."  Id. at 174.  And Officer Taylor added that, if force had been involved in the incident, jail policy would have required him to fill out a form, which he did not do.

However, Williams testified and painted a dramatically different picture of the events.  According to Williams, Corporal Brooks and Officer Taylor attacked him, struck him repeatedly, and unnecessarily placed him in restraints.  He further testified that the officers' assault left him with a bloody mouth and that the officers destroyed photographs of his child.  Williams did not explain why he refused the offered medical treatment.

Williams tendered the following proposed jury instruction:  "In this case, there has been evidence that the Delaware County Sheriff Department destroyed evidence.  If you believe that the State engaged in such conduct, then you may infer that such evidence would have been unfavorable to the State and beneficial to the accused."  Appellant's App. at 84.  The trial court rejected Williams' tendered instruction, stating that "[t]here is no evidence . . . that the Delaware County Sheriff's Department destroyed evidence."  Transcript at 237.  The jury then found Williams guilty of intimidation, as a Class D felony, but it acquitted him of attempted battery by body waste.  The court entered its judgment of conviction and sentence accordingly.  This appeal ensued.

4

## DISCUSSION AND DECISION

On appeal, Williams argues that the trial court abused its discretion when it denied his proposed jury instruction and that the State denied him his right to due process when it failed to preserve potentially useful evidence.[1] Williams' argument in this appeal is nearly identical to the defendant's argument in Jewell v. State, 672 N.E.2d 417 (Ind. Ct. App. 1996), trans. denied. As we explained in Jewell:

> Jewell sought to take advantage of the fact that the police had not preserved the bloody sheets or performed further forensic tests on evidence at [the] crime scene. Jewell argued vigorously to the jury the possibility that, had the evidence been preserved and tested, it may have exonerated him by revealing that someone other than Jewell had committed the crime. For example, Jewell argues that blood tests may have revealed that someone else's blood, besides his or Jones', had been spilled at the crime scene. In support of this theory, Jewell tendered the following jury instruction which the trial court refused:
>
> > If you find that the State has intentionally, knowingly, recklessly, or negligently lost, destroyed, or failed to preserve evidence whose contents or quality are important to the issues of this case, then you should weigh the explanation if any given for the loss or unavailability of the evidence. If you find that such explanation is inadequate, then you may draw an inference unfavorable to the State, which in itself may create a reasonable doubt as to the Defendant's guilt.
>
> When this instruction was refused, Jewell tendered an alternative instruction which deleted the term "negligently." This variation was refused as well. . . .

---

[1] The State asserts that Williams has not properly preserved his due process claim because he did not raise it below. We cannot agree, but we do not read Williams' due process argument as substantively different from his argument that the trial court abused its discretion when it denied his tendered jury instruction. Rather, Williams' argument on appeal, which he made to the trial court, is that the State was required to preserve the jail's surveillance video and that he should have been allowed to use the State's failure to do so against the State. Insofar as Williams may have intended another due process argument on appeal, that argument is not supported by cogent reasoning and is waived. Ind. Appellate Rule 46(A)(8)(a).

When reviewing the refusal of a tendered jury instruction, the court on review must determine whether the tendered instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether [the] substance of [the] tendered instruction is covered by other instructions. Evans v. State, 571 N.E.2d 1231, 1236 (Ind. 1991). Before a defendant is entitled to reversal, he must affirmatively show that there was error prejudicial to his substantial rights. Tyson v. State, 619 N.E.2d 276, 300 (Ind. Ct. App. 1993), trans. denied, cert. denied, 510 U.S. 1176, 114 S. Ct. 1216, 127 L. Ed. 2d 562. The giving or refusing of jury instructions is a matter largely entrusted to the sound discretion of the trial court. Id. [at] 293.

The failure to preserve potentially useful evidence may constitute a denial of due process and require reversal where the criminal defendant can show bad faith on the part of the police. Bivins v. State, 642 N.E.2d 928, 943 (Ind. 1994), cert. denied, 516 U.S. 1077, 116 S. Ct. 783, 133 L. Ed. 2d 734. Indiana courts have long required a showing of bad faith on the part of the police in evaluating whether the failure to preserve evidence constitutes a denial of due process. Id.; McGowan v. State, 599 N.E.2d 589, 594 (Ind. 1992). Jewell argues that, even if the refusal of his instructions did not violate his federal right to due process, we should find that it was violative of the greater due process protection provided under Indiana's constitution.

At the outset, we note that the instruction tendered by Jewell . . . merely invites the jury to find reasonable doubt based on the failure of the police to preserve the evidence in question.

Moreover, Jewell has never seriously argued that the police exercised bad faith in failing to preserve evidence from the crime scene. As noted above, the police had explained that they had not considered the possibility that the blood of anyone else besides Jones could have been left at the crime scene. This conclusion is reasonable. The cowardly attack upon Jones took place while he was sleeping. While Jones awoke and struggled with his attacker, there is little reason to expect that the unarmed Jones, soon beaten unconscious with a board, could have drawn blood from his assailant. Therefore, it does not follow logically that the failure of the police to preserve evidence from the crime scene would give rise to an inference adverse to the State. Further preservation and testing of evidence from the crime scene may well have produced additional evidence against Jewell. Thus, Jewell's instruction is not supported by evidence and was properly refused. See Nettles v. State, 565 N.E.2d 1064, 1069 (Ind. 1991) (Trial court properly refused instruction that jury could infer that evidence

6

destroyed or permitted to deteriorate by the State would have been unfavorable to the State and beneficial to the accused); Greene v. State, 515 N.E.2d 1376, 1382 (Ind. 1987) (Trial court properly refused instruction that jury could presume that videotapes recorded over by the State would have provided evidence against its interest).

Under the circumstances present in this case, Jewell's due process rights, whether derived from the United States or the Indiana Constitution, have not been compromised by the trial court's refusal of the tendered instruction that the jury could draw an inference adverse to the State from its destruction of or failure to preserve evidence. Therefore, we find no error.

Id. at 424-26 (emphases added; some citations omitted). Although Williams recognizes Jewell in his brief on appeal, he makes no attempt to distinguish it.

Here, Williams sought to take advantage of the fact that the State did not preserve the jail surveillance video. Williams argued to the jury that the State's failure to produce the video should be questioned. Williams continues this attack on appeal, asserting that "the video images . . . would have corroborated Williams' version of the facts and discredited Brooks' and Taylor's version of the facts, thus supporting Williams' credibility . . . ." Appellant's Br. at 8. Accordingly, Williams contends that the trial court abused its discretion when it denied his tendered instruction and that the State denied him his right to due process when it failed to preserve this potentially useful evidence.[2]

As in Jewell, the instruction here "merely invite[d] the jury to find reasonable doubt based on the failure of the [State] to preserve the evidence in question." 672

---

[2] Williams also asserts that the State's failure to preserve the potentially useful evidence violated a local rule of Delaware County. Insofar as that local rule might apply here, Williams' argument is substantively identical to his due process argument. As such, for the same reasons we reject his due process argument we reject his argument under the local rule.

7

N.E.2d at 425. But Williams "has never seriously argued that the police [or any other agent of the State] exercised bad faith in failing to preserve [the] evidence . . . ." Id. On appeal, Williams argues that the evidence was in dispute regarding the witness' credibility. Be that as it may, he points to no evidence that suggests the police acted in bad faith when they did not preserve the video images. To the contrary, both Corporal Brooks and Officer Taylor testified that they simply never even thought to review the video tape, which is reasonable because the tape did not record sound and the basis for the State's intimidation charge was Williams' statements to Corporal Brooks and Officer Taylor.[3] Officer Taylor also testified that, after Williams had been moved to the segregation cell, Officer Taylor did not fill out paperwork that would have been mandatory had force been involved. And Williams acknowledged, without explanation, that he had refused medical treatment upon being placed in the segregation cell.

"[T]he State does not have 'an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" Terry v. State, 857 N.E.2d 396, 406 (Ind. Ct. App. 2006) (quoting Arizona v. Youngblood, 488 U.S. 51, 58 (1988)), trans. denied. And even if the officers had preserved the surveillance video, Williams' assertion on appeal that it would have corroborated his testimony is speculation. It is at least equally likely that the video "may well have produced additional evidence against" Williams by discrediting his testimony rather than crediting it. See Jewell, 672 N.E.2d at 425.

---

[3] Perhaps the video could have been relevant evidence on the State's charge of attempted battery by body waste, but we need not consider that question since the jury acquitted Williams of that charge.

In sum, Williams' tendered instruction was not supported by the evidence and was properly refused.  See id.  Williams' due process rights have not been compromised by either the trial court's refusal of the tendered instruction or the State's failure to preserve the potential evidence.  As such, we affirm Williams' conviction.

Affirmed.

BAKER, J., and CRONE, J., concur.