DOYNE LARIMER v. STATE OF INDIANA.

[No. 2-374A62. Filed April 24, 1975. Rehearing denied July 2, 1975.]

674

*Harriette Bailey Conn,* Public Defender of Indiana, *Darrell F. Ellis,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

STATON, P.J.—Larimer had been charged with incest.[1] During his jury trial, his defense counsel objected to Detective Likens' testimony relating to Larimer's confession. This confession, the defense counsel contended, was involuntarily given by Larimer. The confession had been made by Larimer near the end of a four and one-half hour interrogation which ended after midnight in the prosecutor's office. Larimer's defense counsel was not present at the interrogation. The trial court overruled the objection to Detective Likens' testimony. Later, the State offered a tape recording into evidence for the purpose of impeaching Larimer. The tape had been made during the four and one-half hour interrogation in the prosecutor's office. It contained references to Larimer's prior homosexual conduct as well as to his institutional treatment for mental illness at Muscatatuck. These references were not deleted before the tape was heard by the jury.

Larimer's appeal to this Court raises the following issues for our review:

Issue One:    Did the trial court err when it overruled the objection to Detective Likens' testimony relating to Larimer's confession?

Issue Two:    Was the admission of Larimer's confession harmless error?

---

1. IC 1971, 35-1-82-1; Ind. Ann. Stat. § 10-4206 (Burns 1956).

Issue Three:  Must the trial court take appropriate steps to delete immaterial and prejudicial matters placed upon a tape recording which are not germane to purpose of impeachment?

Our review concludes that a separate evidentiary hearing out of the presense and hearing of the jury is required on the issue of voluntariness. The trial court must make a separate determination on the voluntariness of Larimer's confession before it is admitted into evidence as mandated by IC 1971, 35-5-5-1; Ind. Ann. Stat. § 9-1634 (Burns 1974 Supp.). We further conclude that the trial court's failure to make a separate voluntariness determination before admitting Larimer's confession into evidence was not harmless error. The immaterial and prejudicial matters on the tape, which were not necessary for impeachment purposes, should have been deleted by the trial court. We reverse the trial court's judgment, and we instruct the trial court to grant Larimer a new trial.

## I.

### Voluntariness and Harmless Error

Detective Likens was called by the State to give testimony concerning Larimer's confession. Larimer's defense counsel objected for the reason that the confession was not voluntarily given by Larimer. An evidentiary hearing was requested upon the issue of voluntariness. The trial court, in the presence and hearing of the jury, overruled the objection without determining the voluntariness issue. This was error. IC 1971, 35-5-5-1; Ind. Ann. Stat. § 9-1634 (Burns 1974 Supp.) mandates the trial court to hear evidence out of the presence and hearing of the jury and to determine the issue of voluntariness before admitting confessions in evidence. IC 1971, 35-5-5-1 provides:

"In any criminal prosecution brought by the state of Indiana, a confession, as defined in section (5) [§ 9-1638] hereof, shall be admissible in evidence if it is voluntarily given. *Before such confession is received in evidence, the trial judge shall, out of the presence and hearing of the jury,*

*determine any issue as to voluntariness.* If the trial judge determines that the confession was voluntarily made, it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." (Our Emphasis). Also see, *Johnson* v. *State* (1972), 258 Ind. 683, 688-89, 284 N.E.2d 517, 520.

The trial court's failure to make ". . . a reliable determination . . ." that the confession was in fact voluntarily rendered constituted a violation of Larimer's Fifth and Fourteenth Amendment rights, as well as a violation of IC 1971, § 35-5-5-1. *Jackson* v. *Denno* (1964), 378 U.S. 368, 377, 84 S.Ct. 1774, 12 L.Ed.2d 908. This federal constitutional error requires that we determine whether, as a matter of federal law, this error was harmless beyond a reasonable doubt under the circumstances of this case. *Chapman* v. *California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Greer* v. *State* (1969), 252 Ind. 20, 245 N.E.2d 158; *Bauer* v. *State* (1973), 157 Ind. App. 400, 300 N.E.2d 364.

Some harmless error guidance can be gleaned from *Chapman* v. *California, supra,* 386 U.S. at 24, 87 S.Ct. at 828:

". . . We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard. . . ."

The *Chapman* Court characterized the facts as follows:

". . . And though the case . . . presented a reasonably strong 'circumstantial web of evidence' against [the] petitioners . . . it was also a case in which, *absent the constitutionally forbidden comments, honest fair-minded jurors might very well have brought in not-guilty verdicts.* Under these circumstances, it is completely impossible for us to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's

instruction did not contribute to petitioners' convictions." 386 U.S. at 25-26, 87 S.Ct. at 829. (Our Emphasis).

When applying the federal harmless error standard, we must weigh the evidence against Larimer—absent his confession—and determine whether, beyond a reasonable doubt, an honest and fair-minded jury would have rendered a guilty verdict based solely on the remaining untainted evidence. See *Greer* v. *State* (1969), 252 Ind. 20, 245 N.E.2d 158.

Upon a review of all the evidence in the record—except Detective Likens' testimony relating to Larimer's confession—we are unable to conclude beyond a reasonable doubt that the constitutional error did not contribute to Larimer's conviction. The State's case-in-chief consisted of testimony from Larimer's two minor daughters, Detective Likens and certain circumstantial evidence which tended to corroborate the testimony of the prosecuting witnesses. Larimer's evidence consisted of his testimony which denied his daughters' allegations. Additionally, he offered the testimony of his neighbors and a relative which tended to impeach the credibility of his daughters.

Absent Larimer's confession, the jury's resolution of Larimer's guilt or innocence would have been substantially based on the credibility of the witnesses. In light of the powerful probative impact on the average juror of a defendant's confession of guilt and the delicate balance of the testimony, it would be impossible for us to conclude that the constitutional error was harmless beyond a reasonable doubt. A new trial will be required.

## II.

### Impeachment by Tape Recording

The State attempted to introduce the tape recording of Larimer's confession during its case-in-chief. An objection that the tape contained prejudicial matters which were immaterial to the confession was sustained. Later, when Lari-

mer testified on his own behalf, he denied the act of incest and the confession. In rebuttal, the State again offered the tape in evidence to impeach Larimer. Again, the same objection was made to the tape, but the trial court overruled the objection. Larimer's defense counsel followed up the overruling of his objection with a request for an *in camera* review of the tape so that the trial court could delete prejudicial and immaterial matters. The trial court refused defense counsel's request. After playing the tape, the trial court admonished the jury to disregard the statements on the tape pertaining to Larimer's history of homosexuality and mental illness.

After Larimer's confession, *Lamar* v. *State* (1972), 258 Ind. 504, 282 N.E.2d 795, was decided by the Indiana Supreme Court.[2] *Lamar* v. *State, supra,* establishes five specific standards for the admission of tape recordings.[3] One of these five standards requires that the party offering the tape recording show that it ". . . does not contain matter otherwise not admissible in evidence. . . ." 258 Ind. at 513, 282 N.E.2d at 800. Therefore, an objection that the tape recording contains immaterial and prejudicial matters in addition to the matter at issue, requires the trial court to review the tape recording and to take such appropriate steps as necessary to delete the immaterial and prejudicial material. Our Indiana Supreme Court in *Lamar* v. *State, supra,* 258 Ind. at 510, 282 N.E.2d at 799, stated:

"If the objectionable portions can be eliminated, however, we see no justification for their exposure to the jury. To reconcile such matters, the trial judge, in the absence of the jury, should be furnished with a typewritten transcription of recordings and should

2. This appeal was fully briefed and submitted to this Court on September 10, 1974.

3. The *Lamar* Court held that the admission of sound recordings should be preceded by a foundation disclosing that: (1) the recording is authentic and correct; (2) the testimony elicited was freely and voluntarily given; (3) all required warnings were given and all necessary acknowledgments and waivers were knowingly given; (4) the recording does not contain matters otherwise not admissible into evidence; and (5) the recording is of such clarity as to be intelligible and enlightening to the jury. 258 Ind. at 513, 282 N.E.2d at 800.

also listen to the recording. If it is determined that the recording is generally admissible, a determination can then be made as to how best to insulate the jury from such portions, if any, as may be inadmissible."

The judgment of the trial court is reversed with instructions to grant Larimer a new trial.

Garrard, J., concurs; Hoffman, J., dissents with opinion.

## DISSENTING OPINION

HOFFMAN, J.—I dissent from the majority opinion.

Appellant, in his brief, after setting out verbatim the motion to correct errors, states the following:

"The issues therefore presented, are as follows:

1. Whether a proper foundation was laid prior to the use of a tape recording;
2. Whether the tape recording was proper rebuttal evidence;
3. Whether the statement contained in the tape recording was coerced."

The above points are all that were argued or briefed by appellant and are the sole issues which may be considered on appeal.

During the State's case-in-chief the tape recording was offered into evidence. Defendant's counsel voiced a comprehensive objection to the introduction thereof which was sustained by the trial court. Under cross-examination the defendant denied making certain statements which were on the tape recording. Upon rebuttal, the State offered a portion of the tape recording into evidence for the purpose of impeachment. Over objections of defendant's counsel the trial court permitted the jury to hear a portion of the tape recording.

Appellant contends that a proper foundation was not laid prior to the introduction of the tape into evidence, that the statements made on the tape were coerced, and that it was not proper rebuttal evidence.

In *Lamar* v. *State* (1972), 258 Ind. 504, at 512-513, 282 N.E.2d 795, at 800, our Supreme Court in defining the foundation requirements for sound recordings, stated:

"The admission of a sound recording should be preceded by a foundation disclosing the following:

(1) That it is authentic and correct.

(2) That the testimony elicited was freely and voluntarily made, without any kind of duress;

(3) That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;

(4) That it does not contain matter otherwise not admissible into evidence; and

(5) That it is of such clarity as to be intelligible and enlightening to the jury."

Sound recordings were previously held admissible in *Sutton, et al.* v. *State* (1957), 237 Ind. 305, 145 N.E.2d 425, upon a showing of authenticity and identification of the speakers.

1) Was the tape authentic and correct?

The manner of the recording's preservation must be shown to assure that no changes, additions or deletions have been made. Speakers must be identified. *Lamar* v. *State, supra.*

In the present case, the County Prosecutor testified, under direct examination, as follows:

"My name is Dave Dellinger. I am the County Prosecutor for the 39th Judicial Circuit. On the night in question, June 30th of 1971, this tape recording was taken in my office in the presence of Sgt. Edgar Likens of the Indiana State Police, Robert Christopher, Deputy Prosecutor in my office, the defendant in this case Mr. Doyne Larimer, and myself. Since that date it has been in the possession of my office in my physical possession locked up. It has not been altered or changed in any way. * * *."

Detective Edgar Likens testified that he had listened to the tape in its entirety, reviewed his notes made therefrom, listened to the pertinent portion more than once, and ascertained that the tape was unaltered. The tape was, therefore, sufficiently authenticated.

2) Was the statement freely and voluntarily given?

Detective Sergeant Robert E. Fox testified that when he served the warrant on defendant he read him the following:

"Before we ask you any questions, you must understand your rights.

"You have the right to remain silent.

"Anything you say can be used against you in Court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

Detective Likens testified that prior to talking to the defendant he advised the defendant of his rights and asked him if he had any objections to tape recording the conversation.

The portion of the tape recording admitted into evidence discloses the following:

"MR. DELLINGER: If you have any questions, we'll be glad to answer what you have. You haven't had any problems with any of [us] here tonight?

"THE DEFENDANT: No.

"MR. DELLINGER: Nobody mistreated you in any way?

"THE DEFENDANT: No, I think the people treated me pretty nice."

*Johnson* v. *State* (1968), 250 Ind. 283, at 293, 235 N.E.2d 688, at 694, announced the proper standards for determining if a confession is voluntary:

"In determining whether the due process clause of the 14th Amendment is violated, the admissibility of the confession is tested by the same standard in both Federal and State prosecutions, that is whether under all the attendant circumstances, the confession was free and voluntary, freely self-determined, the product of a rational intellect and a free will, and without compulsion or inducement of any sort, or whether the accused's will was overborne at the time he confessed."

It appears that the statement on the tape in the present case was freely and voluntarily given.

3) Were all required warnings given and all necessary acknowledgments and waivers knowingly and intelligently given?

In discussing this requirement, our Supreme Court, in *Layton* v. *State* (1973), 261 Ind. 251, at 252, 301 N.E.2d 633, at 634-635, stated:

"Appellant's second specification of error revolves around the admission into evidence of a pre-trial confession. Appellant suggests that since a written transcript of the confession and the tape-recording itself were not totally consistent, both having been presented to the jury, it is necessary that the customary waiver of *Miranda* rights be on the tape-recording as well as in written form as it is in the instant situation. The authority for this proposition is purportedly Lamar v. State (1972), [258] Ind. [504], 282 N.E.2d 795. However, that case simply set forth as one of five criteria for establishing a foundation for the admission of a sound-recording 'that all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given.' The precise medium through which a waiver is obtained is not delimited by this rule. Appellant does not, at this portion of his argument, maintain that the waiver was in fact involuntary. We do not see in what ways defendant's rights will be better protected by requiring that a waiver be preserved in the same medium as the confession." *Compare: Schmidt* v. *State* (1970), 255 Ind. 443, 265 N.E.2d 219.

Furthermore, it should be pointed out that since the tape recording was being offered into evidence for impeachment purposes only, a knowing and intelligent waiver may not be necessary. *Oregon* v. *Hass* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570; *Harris* v. *New York* (1971), 401 U.S. 222, 91 S.Ct. 643, 28 L.E.2d 1; *Johnson* v. *State* (1972), 258 Ind. 683, 284 N.E.2d 517; *Sankey* v. *State* (1973), 157 Ind. App. 627, 301 N.E.2d 235.

4) Was all inadmissible matter deleted from the tape?

If a tape recording is to be offered as evidence, the trial judge should be furnished with a typewritten transcript of

such recording and should also listen to the recording to determine how to best insulate the jury from any inadmissible portions. *Lamar* v. *State, supra.*

While no evidence of a written transcript is contained in the record, it appears that the trial judge in the present case did listen to the pertinent portion of the tape. However, when the tape recording was played to the jury, the following portion was included:

"MR. LIKENS: You say you did tell Maxine about wearing the clothes?

"THE DEFENDANT: What?

"MR. LIKENS: You say you did tell Maxine about wearing the [women's] clothes?

"THE DEFENDANT: Why I wore them?

"MR. LIKENS: Yes.

"THE DEFENDANT: Yea, I told her that. She seen me.

"MR. LIKENS: Well, she saw him wearing them and he thought they ought to have a right to know why he was wearing them.

"THE DEFENDANT: Yea, I told them that.

"MR. LIKENS: When was that? A month ago or sometime ago or what?

"THE DEFENDANT: Probably about a month ago.

"MR. LIKENS: Sometime recently?

"THE DEFENDANT: Yea.

"MR. LIKENS: You told them it was because of what happened to you down at Muscatatuch? [sic]

"THE DEFENDANT: Yea, that's what I told 'em. I told them I never felt like I was a man. I shouldn't never been a dam [sic] man. Yep, that's what I told them.

"MR. DELLINGER: That's just what you've told us to-night.

"THE DEFENDANT: Yea.

"MR. DELLINGER: And I really think that is honest to God the truth.

"THE DEFENDANT: It certainly is the truth. If you want the dam [sic] nigger's name

that done it, I can even give you that and can even tell you where he's at today."

The trial judge quickly admonished the jury to disregard the foregoing testimony. An admonition to disregard improper testimony is presumed to correct any alleged error. *Martin* v. *State* (1974), 261 Ind. 492, 306 N.E.2d 93.

A proper foundation was laid by the State for admission of the tape recording especially when offered only for impeachment. The record clearly demonstrates that such statements were not coerced. The statements were admissible for impeachment purposes after the defendant testified.

The record before us clearly demonstrates that as a matter of law the trial court could not find that statements made by the defendant were involuntarily made. All of the facts were presented to the jury who made their determination. The record clearly demonstrates guilt beyond a reasonable doubt.

The judgment of conviction of the trial court should be affirmed.