**Terrance LEE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 71S00–8704–CR–413.

Supreme Court of Indiana.

Aug. 3, 1988.

Timothy S. Brennan, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of two counts of Murder and one count of Attempted Murder. On the first count of Murder, appellant received a term of sixty (60) years; on the second count, he received a term of forty (40) years; and on the count of Attempted Murder, he received a sentence of fifty (50) years to be served consecutively to the terms assessed in the murder counts.

The facts are: At approximately 5:45 p.m., on Saturday, March 22, 1986, South Bend police officers were called to a home at 505 East Corby Street in South Bend where they found the body of Bernard Bibbs, who had been shot, and the body of Johnny Griffin, who had been severely beaten and stabbed. Kimberly Whitlock had been in the house at the time Bibbs and Griffin died. She identified the assailants as Billy Foulks and Terrance Lee, the appellant in this case.

She testified that Lee held her at gunpoint while Foulks beat Griffin while demanding the location of cocaine and money and then stabbed him. Foulks then told her that she had a problem, whereupon Lee pointed his gun at her and opened fire. She sustained several gunshot wounds but pretended to be dead, and after Foulks and

appellant left she fled the home through the bedroom window.

Appellant offered an alibi defense, claiming that he was at the home of his girl friend, Dionne Richardson, on the evening of the killing. Richardson testified that appellant was with her that evening and had slept with her that night. They had planned for some time to marry and leave South Bend and go to the State of Washington where they would live with appellant's sister until he could find work. Richardson's mother also testified that she knew of the plans of appellant and Richardson to move out of South Bend.

Sandra Richmond testified that she knew Bibbs, Griffin, Foulks, and appellant. She knew Foulks was a drug dealer and that Johnny Griffin, who was her boyfriend at the time of his death, was a wholesaler of cocaine. She testified that Bibbs was Griffin's bodyguard and that appellant was Foulks' bodyguard. She testified that on Saturday morning, March 22, between 6:00 and 7:00 a.m., appellant and Foulks returned to her home. She noticed that Foulks had a large rock of cocaine with him and that his hand had a wound that appeared as if the skin had been pulled back.

Appellant claims the trial court erred in the admission of an audio-video tape of the crime scene and in overruling his motion to strike and disregard the tape after it was shown to the jury. Appellant first raises the question of the chain of custody of the tape; there is nothing in this record, however, to indicate any question concerning the chain of custody. In fact, Officer Thomas Trennerry, who narrated the tape, positively identified it, and was not questioned concerning the chain of custody. We see nothing in this record to raise any issue concerning the chain of custody.

■ Appellant also contends it was error to admit the tape because it was not previewed ahead of time by the trial court. The State correctly observes that it is counsel's responsibility to examine potential exhibits and to make proper objection thereto. If an exhibit contains inadmissible matter and counsel objects thereto, it is only then

that the court must preview the evidence in order to rule on any objection. *Larimer v. State* (1975), 163 Ind.App. 673, 326 N.E.2d 277.

■ In the case at bar, appellant's initial objection did not go to any specific content of the tape which would require the court's preview. During the showing of the tape, appellant did make several objections which were overruled by the trial court. Appellant also objected to the narration on the tape by Officer Trennerry, stating that he could not cross-examine a tape. However, Officer Trennerry was on the witness stand at the time the tape was admitted, remained in the courtroom after the showing of the tape, and in fact was subjected to cross-examination by appellant.

Officer Trennerry's narration in no way connected appellant with the case nor did he draw any conclusions concerning appellant. His narration was purely factual as to what was being depicted on the tape at the time. He did make numerous observations pointing out what he described as bloodstains and also pointed out a hole that he described as being made by a shotgun blast. These were remarks, however, which he could have properly made in person in the courtroom at the time the tape was being shown. These remarks, although conclusory, were subject to cross-examination and challenge as to the correctness of the observation and the officer's qualification to draw such conclusions.

After the tape was played to the jury, appellant moved that the court instruct the jury to disregard the tape since it was "designed solely to be prejudicial and inflammatory and is so repetitious and full of obvious conclusions of the witness" and further that he could not cross-examine the tape. We hold the trial court did not err in permitting the tape to be shown to the jury and that nothing occurred during the showing of the tape which would warrant an instruction for the jury to disregard the same. As we have previously stated, appellant had every opportunity to cross-examine Officer Trennerry as to anything said or depicted on the tape.

■ Appellant also claims the transcript of the audio portion of the tape contained in the trial record has at least two errors. One is that the transcript describes the location as where "double homicide" occurred, whereas on the actual tape the language is "double murder." At another portion of the transcript, appellant claims there is an omission in that on the tape there was an unidentified voice directing Officer Trennerry to once again put his flashlight on a pool of blood. It is true, as cited by appellant, that *Kiefer v. State* (1958), 239 Ind. 103, 153 N.E.2d 899 states that undue emphasis for the purpose of arousing the passions and prejudices of the jury should not be permitted.

However, we do not perceive the reference to the crime as a double murder rather than a double homicide or the fact that an unidentified voice asked Officer Trennerry to redirect his flashlight to a pool of blood to be so prejudicially repetitious that it clearly was done for the purpose of inciting the passions of the jury. Appellant was charged with a double homicide. This the jury clearly understood. It is hardly realistic to believe that to describe the scene of a "double murder" would surprise the jury or tend to unduly arouse their passion. The fact that the nature of the crime produced an unusual amount of blood which was depicted at the scene does not in and of itself render the evidence inadmissible. *Brown v. State* (1987), Ind., 503 N.E.2d 405. The trial court did not err in admitting the video tape into evidence nor did it err in refusing to instruct the jury to disregard the tape.

■ Appellant claims the trial court erred in that prior to trial the court in an *ex parte* proceeding granted the State's petition to issue subpoenas for certain witnesses pursuant to Ind.Code § 33–14–1–3. The obvious purpose of the statute is to permit the prosecuting attorney to proceed with an orderly investigation of crime and to furnish him with a device to obtain the presence of recalcitrant witnesses. This statute has been held not to violate the Fourth Amendment protections of the Con-

stitution. *In re Thompson* (1985), Ind. App., 479 N.E.2d 1344.

In a related situation, this Court has held that pretrial depositions are not critical stages of a case requiring a defendant's presence. *Jones v. State* (1983), Ind., 445 N.E.2d 98. In the case at bar, only one of the subpoenaed witnesses failed to testify at the trial. All other witnesses did testify at the trial and were subject to cross-examination at that time, thus affording appellant his right of confrontation. We hold that no reversible error occurred as a result of the issuance of the subpoenas.

■ Appellant claims the trial court erred in permitting the State to elicit testimony concerning tape recordings that were not in evidence. Ricardo Phillips was called as a witness for the State. During his testimony, it developed that he had taken Terrance Lee out of town, and when the police discovered this, they threatened him with jail if he would not allow them to place a recording device on his person to be used to record a conversation when Phillips visited the apartment of Dionne Richardson and her friends.

The State asked Phillips if at the time he took appellant to O'Hare Airport if appellant had $4,000 on his person, to which Phillips answered he did not think so. The State then read from a transcript made from the recording device Phillips had worn which demonstrated that he did in fact know that appellant had approximately $4,000 in his possession at the time he was taken to O'Hare Airport.

Appellant claims it was error to permit the State to ask such a question since the transcript of the tape recording had not been placed in evidence. In citing cases concerning the admissibility of prior statements, appellant misconceives the situation at hand. In laying the groundwork for impeachment, it is not necessary to introduce the prior statement into evidence before the question is asked of the witness. In fact, it is improper to place the prior statement into evidence if the witness admits he made the statement. *See Miller, Indiana Evidence,* § 613.102.

It was proper for the trial judge to permit the questioning of the witness to lay the groundwork for impeachment. However, when the State sought to introduce the prior statement, the trial court ruled that it was inadmissible and at that time instructed the jury to disregard the prior questioning. The situation raised by the questioning was not severe enough to warrant the trial court's granting of the motion for mistrial. *Dalton v. State* (1987), Ind., 504 N.E.2d 568. The court's admonition to the jury obviated a need for a mistrial under the circumstances. *Johansen v. State* (1986), Ind., 499 N.E.2d 1128.

■ Appellant claims there is not sufficient evidence to sustain the verdict and states this is evidenced by the jurors' written questions to the court. During deliberations, the jury sent written questions concerning the timing of conversations between appellant and witness Wesley Poindexter. Upon receiving the questions, the trial court consulted with counsel at which time no objection was lodged by appellant's counsel. The jury was then called back into the courtroom and informed that the questions could not be answered, that they must rely on their recollection of the evidence. Appellant now concludes from the unanswered questions that the jury's verdict was necessarily based on speculation and conjecture and thus should be set aside. The fact that the jury resumed their deliberations and returned a verdict indicates they were able to do so without further consideration of that question. We see no basis for error on this issue.

■ Appellant claims it was reversible error for the State to read a detective's report during the questioning of a witness to "refresh her recollection," and a mistrial should have been granted therefor. Vanessa Richardson testified that in March of 1986 she resided at 418 South Pulaski in South Bend. She also testified she had not seen the defendant there on Friday, March 21, 1986, when she went out between 10:00 and 11:00 p.m, but she did see a form in the bed with her sister Dionne the following morning when she returned home and assumed that it was appellant. The prosecu-

tor then asked her if she had ever told anyone that Dionne was in bed with the witness's daughter when she looked in on them early Saturday morning. She was then asked if she recalled having a conversation with Sergeant Dave Doseman on April 9, 1986, and she replied, "Yes." When asked if she remembered what she told him, she responded, "Vaguely."

After reviewing the detective's report, the witness was then asked the following question. "Did you tell Sgt. Doseman in his report what Billy Foulks and Terrance Lee did was completely wrong?" The court sustained appellant's objection and admonished the jury to disregard the question, then overruled appellant's motion for mistrial. There is no showing in this record that appellant was subjected to grave peril because of the questioning. Here again the admonition of the court is presumed to be curative unless the contrary is shown. *Id.*

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DICKSON, J., concurs in result without separate opinion.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

State's Exhibit No. 9 was a video tape recording of the crime scene, taken immediately after commission by police and narrated on the tape by Officer Trennerry. Lee objected to its admission, objected during the playing of the tape, and moved to strike the tape after it was played. All objections and the motion were denied.

Such exhibits create two distinct evidentiary problems. The video camera is under the control of the cameraman who is selecting the places to be filmed and the sequence of their filming. A foundation requirement for admission of such an exhibit should require a showing that the film as a whole is a fair and reasonable representation of that which it purports to represent, namely, the area in which the crime occurred. This is the requirement that it be shown authentic and correct. *Lamar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795. The second problem is that the narrative may include improper opinion or statement of fact. A foundation requirement for admission should require that the exhibit not contain matter otherwise not admissible into evidence. The narrative portion of the tape is after all simply an unsworn statement of a party to a lawsuit being generated for trial purposes, and ordinarily usable therefore at trial for the sole purpose of refreshing recollection. The proponent of such an exhibit should have the burden of showing that the exhibit contains only relevant and admissible statements. This is also a *Lamar* requirement. I agree with appellant that narrated tapes of this sort carry a great risk of distortion and immutable and subtle prejudice.

On this exhibit, the narrating officer made the following statements:

"Ladies and Gentlemen, blood in pool form"

"..double murder.."

"..you will notice that the table has been broken, obviously by some sort of struggle."

"On the telephone itself, you will notice high velocity impact blood stain evidence."

The basic position of the State is that the objections of defense counsel did not come before or even contemporaneously with admission of the allegedly objectionable parts. In this position the State is correct. However, I would modify the law applicable to this type exhibit in either of two ways: the narrative parts should be declared totally inadmissible, or the narrated tape because not in question and answer form should be admissible only after viewing by the trial court while the counsel opposing admission has an opportunity to object for the record.