Stephen William WOODS,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–9106–CR–152.[1]

Court of Appeals of Indiana,
First District.

March 9, 1992.
Transfer Denied April 29, 1992.

Judge.

---

1. This case was transferred to our office on January 29, 1992 by direction of the Chief

Anthony V. Luber, South Bend, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Stephen William Woods appeals his jury trial conviction of rape as a class B felony, for which he received an eight (8) year sentence. On appeal, he claims:

I. The evidence is insufficient to support his conviction.

II. The trial court erroneously permitted the State to question prospective jurors about whether a female victim deserves to be raped because of certain conduct.

III. The trial court erroneously instructed the jury in that it:

  A. stated the law only requires that a woman not consent to establish rape;

  B. stated a person may be convicted of rape upon the uncorroborated testimony of the victim;

  C. did not state the lack of corroboration could be considered in determining the weight or effect of uncorroborated evidence;

D. gave an additional instruction on the mistake of fact defense which was confusing and misleading;

E. did not state circumstantial evidence must exclude every reasonable hypothesis of innocence to support conviction;

F. gave an instruction on the presumption of innocence which was argumentative and prejudicial;

G. gave an instruction on reasonable doubt which was argumentative and prejudicial; and

H. gave an instruction on the elements of rape that was mandatory in form.

We affirm.

The evidence reveals that, after they had drunk some brandy, S.E.R., the victim, had a fight with her boyfriend about another woman. She then left the house but tried to call the boyfriend numerous times throughout the evening. As she called from a telephone booth, Woods and a friend stopped and invited her to a party just down the street. She accepted and followed them to the house in her car. The three went to the basement, and the friend left some time later. Woods then turned out the light and began to make sexual advances toward the victim. He tried to hold on to her and tried to kiss her. She resisted and pulled away. She stated she could not believe what was happening and told Woods to stop. Woods then pulled her pants down, put his hand over her mouth, and told her if she did not shut up he would call for help from upstairs. He said his uncles would hold her down for him. He then put his penis in her vagina and forced her to have sexual intercourse with him against her will.

### I.

According to Ind.Code 35–42–4–1(1), a person who knowingly or intentionally has sexual intercourse with a member of the opposite sex, when the other person is compelled by force or imminent threat of force, commits rape as a class B felony. On appeal, Woods claims the evidence is insufficient to support the conclusion that he knew his conduct compelled the victim to submit by force.

■ Here, S.E.R. resisted Woods' advances and pulled away from him. She told him to stop; and, in response, Woods pulled her pants down and put his hand over her mouth. He told her if she did not shut up he would get help to hold her down. He then completed the act of sexual intercourse. This is substantial evidence of probative value which sufficiently supports the conclusion that Woods knew his conduct compelled the victim to submit by force.

### II.

■ Woods claims the prosecutor improperly questioned prospective jurors with reference to a publicized rape case from Florida. The following occurred during voir dire:

There was a case in Florida that was decided by a jury. I want to say about a year or so ago, that made a lot of news. "Newsweek" had something on it and essentially what it was, and I haven't read the case—I don't really know the facts, I'm telling you what I have heard from news reports—

MR. LUBER: I object Your Honor to the form of the question.

MR. MARNOCHA: May we approach?

(SIDE BAR CONFERENCE)

MR. LUBER: Jury voir dire is for the purpose of exploring whether or not the jurors can not be fair and impartial. Plying with stories we don't think is proper, particularly since the items reported in the press may be incorrect and I think that the giving of the source from a news source that is unverifiable at this point may pollute the jury. The content and gist of that story when there may be jurors who have never heard it. I think it may possibly Judge taint the jury in this particular case.

THE COURT: I don't know. Where are we going?

MR. MARNOCHA: It was reported in the press a woman in Florida was raped. Eventually from conversations they had

had with the jurors, one of the jurors said "Well, we won't convict the guy because of the way she was dressed," and asking—they basically felt she was asking for it. I think I can ask. That was set up to ask people how they feel about a woman who might not dress appropriately or act appropriately is a fair victim for a sex offense because of those things. I don't see any prejudicial impact.

MR. LUBER: I don't think its proper voir dire. I think its the *Lawrence vs. State* case that gives limitations on what the questions can be. Preconditioning the jurors as to this kind of stuff.

MR. MARNOCHA: I agree with that. I cannot say—I cannot review the facts of the case and say if you found they did this or that—that's absolutely true. I think that's what Mr. Luber is talking about in the *Lawrence* case, but I have a generic question I have the ability to discuss about the preconceptions with respect to the issue of rape; especially we believe due to some statements by the defendant that the issue the defendant came and partied and we have to ask whether or not poor judgment on the part of the defendant excuses the defendant.

THE COURT: I have to rule. I'm going to deny the objection.

\*   \*   \*   \*   \*   \*

MR. MARNOCHA: The jury talked about things like they took exception to the dress she was wearing which apparently was either see-through or semi-see-through, and she wasn't wearing underwear and one of the jurors commented and said she was asking for it. I guess what I'm kind of getting at, in burglary cases for example if you leave your door open and someone breaks in and steals your property, no one says you were asking for it. In sex cases sometimes people do, and what I want to ask you is whether you hold a victim in a sex case to a higher standard of conduct than you would any other case? Miss Sparks, what do you think about that?

JUROR: I'm not sure if I agree.

MR. LUBER: I object.

THE COURT: Approach please.

(SIDE BAR CONFERENCE)

MR. LUBER: We would object. There is no standard of conduct on the part of the victim. The only issue deals with the defendant; whether or not he did what is alleged. There is no standard of conduct on the part of the victim. It's irrelevant.

MR. MARNOCHA: I realize there is no standard of care—that's the whole purpose of the question so they don't impose a standard of conduct on the victim in a sex case.

THE COURT: I'll deny the objection.

MR. LUBER: The objection is again on the basis of improper voir dire.

MR. MARNOCHA: Mrs. Sparks, you were saying?

JUROR: Well, I think no matter how you're dressed you should not be personally violated. If you say no that should be enough.

MR. MARNOCHA: Would you require any more from a victim of a sexual assault than any other victim in any other crime?

JUROR: Well, I have never been in this situation, but I had had dreams where I tried to scream and couldn't so I don't think you can judge.

MR. MARNOCHA: And you said you think no should be enough. I guess a follow up to that question, do you think a woman needs to put herself in danger of physical injury or incur physical injury before you believe she had resisted enough that you would find it to be rape?

JUROR: Well, you can only go so far and then you are really in more physical danger. That's a hard question to answer.

MR. MARNOCHA: I realize that. Miss Scott, what about you on that? I think there were three or four questions. Would you hold a victim of sexual assault to a higher standard than any other crime? Would you tend to look at what she did?

JUROR: No.

MR. MARNOCHA: Would you require her to incur physical injury or anything

like that before you'd think she had resisted enough?

JUROR: No. Just like she said, no should be enough.

MR. MARNOCHA: Is there anyone in disagreement that they think they would require some physical injury or no is not enough? So each of you think no would be enough and would not require physical injury, is that correct?

JUROR: I think you have to go on what the evidence has proven. You can't necessarily go by the word. You have to go by what evidence has been presented.

MR. MARNOCHA: Anyone else have any feelings one way or the other? So all of you are in agreement basically with what the three jurors have said, is that correct?

The purpose of voir dire is to determine whether a prospective juror can render a fair and impartial verdict in accordance with the law and the evidence. *Games v. State* (1989), Ind., 535 N.E.2d 530, *cert. denied,* 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158. The trial court has broad discretion to conduct and control voir dire, and only an abuse of discretion will warrant reversal of the trial court's decisions. *Concepcion v. State* (1991), Ind., 567 N.E.2d 784.

The purpose of the prosecutor's question was to determine whether, given all of the circumstances surrounding the alleged rape, the jurors would base their votes upon the central issue of whether the victim was compelled to have sexual intercourse and not base their votes solely upon isolated evidence which may have had some impact upon the issue. Thus, the prosecutor directed his question to the subject of whether the jurors could render a fair and impartial verdict, with respect to the issue of compulsion, in accordance with the law and the evidence. The purpose of voir dire is to determine whether a prospective juror is able to deliberate fairly on the issue of guilt. *Lamb v. State* (1976), 264 Ind. 563, 348 N.E.2d 1. The question here sought to determine whether the jurors would give prejudiced and predetermined emphasis to one piece of evidence which had a bearing on the element of consent or whether they could deliberate fairly on the issue of guilt. The prosecutor's question helped ensure the jurors would be fair and impartial. The trial court abused no discretion when it allowed the question during voir dire.

### III.

■ Jury instructions lie largely within the discretion of the trial court. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78. When this Court reviews the decision of the trial court to give or refuse an instruction, it must consider whether the tendered instruction is a correct statement of the law, whether the evidence supports the instruction, and whether the substance of the tendered instruction is covered by other instructions given. *Smith v. State* (1984), Ind., 468 N.E.2d 512.

### A.

■ Woods objected to State's Tendered Instruction No. 4, which states:

A woman, who is assaulted with an intent to commit rape upon her, is not required to resist by all violent means within her power. The law only requires that the case be one in which she did not consent.

Such an instruction has been approved by our supreme court when a question about the victim's consent or duty to resist could have arisen in the minds of the jurors. *Hicks v. State* (1989), Ind., 536 N.E.2d 496. In the present case, the question was directly at issue; and the trial court correctly informed the jury that the State was required to prove the victim was compelled to submit to the sexual intercourse. In light of *Hicks,* this Court is in no position to declare that the present instruction is an incomplete statement of the law.

### B.

■ Woods objected to State's Tendered Instruction No. 6, which states:

A person may be found guilty of the crime of rape upon the uncorroborated testimony of the victim.

In the present case, the jury was also instructed on the elements of the offense charged, the State's burden of proof throughout the case, the presumption of Woods' innocence, the credibility of witnesses, and the manner in which the jury was to deliberate to reach a verdict. In such a case, the above instruction is not improper. *Hicks,* 536 N.E.2d at 499.

### C.

■ The trial court refused Defendant's Tendered Instruction No. 4, which reads:

The lack of corroboration may be considered by the jury in determining the weight or effect of the uncorroborated evidence.

The trial court informed the jury about how weight of evidence may be assessed. The Court's Instruction No. 6, effectively informed the jury about the uncorroborated nature of some evidence:

You are the only judges of the evidence, the weight and believability, or "credibility", of the testimony of the witnesses. In considering the testimony of a witness, you may take into account his or her ability and opportunity to observe, the witness's memory, manner and conduct while testifying; and any interest the witness may have in this case; any bias the witness may have for or against any party to this suit; any relationship with other witnesses or interested parties; and the reasonableness of the witness' testimony when viewed with all of the other evidence in the case.

\*   \*   \*   \*   \*   \*

In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. You may find that your determination of the truth is not controlled by the number of witnesses who testify to a particular fact, or on one side or the other, or the quantity of evidence on a particular point. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

Thus, the trial court's instruction covered the substance of Woods' instruction. That Woods believes the uncorroborated testimony of an alleged rape victim is inherently suspect on the issue of compulsion is a matter properly left to him to argue to the jury. The trial court committed no error when it refused Woods' instruction.

### D.

■ The trial court gave State's Tendered Instruction No. 9, which reads:

For "mistake of fact" to be a valid defense, the following three elements must be satisfied:

1. The mistake must be honest and reasonable;

2. The mistake must be about a matter of fact; and

3. The mistake serves to negate culpability.

Honesty is a subjective test dealing with what the defendant actually believed. Reasonableness is an objective test inquiring what a reasonable man situated in similar circumstances would do.

Woods contends this instruction was confusing and misleading in light of Defendant's Instruction No. 2, which the trial court also gave:

It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact if the mistake negates the culpability required for commission of the offense.

This instruction comes from I.C. 35–41–3–7. The State's instruction did not confuse or mislead but, in fact, clarified the defense for the jury. The trial court abused no discretion.

### E.

The trial court deleted the following from Defendant's Tendered Instruction No. 3, which explained direct and circumstantial evidence:

In a case where circumstantial evidence alone is relied on, the circumstances disclosed by the evidence must be of such character and strength as to

exclude every reasonable hypothesis except guilt. If the circumstances can be explained on any reasonable hypothesis except guilt or can be explained on any reasonable theory of defendant's innocence, the defendant is entitled to acquittal. But circumstantial evidence alone may be sufficient to support a verdict of guilty on any crime, provided that the jury believed beyond a reasonable doubt that the accused is guilty as charged.

Woods claims the evidence about the states of mind of himself and the victim was circumstantial. He therefore claims he was entitled to the entire instruction.

Evidence of a person's state of mind almost always must be inferred from circumstantial evidence. This does not, however, mean that such a circumstantial evidence instruction is almost always required. The rule in this state is that, where there is sufficient direct evidence to convict, any instruction on circumstantial evidence may be refused. *Brendel v. State* (1984), Ind., 460 N.E.2d 919.

The victim offered the following direct evidence. The victim and Woods were alone in the basement when he turned out the light and began to make sexual advances. He tried to hold on to her and tried to kiss her. She resisted and pulled away. She stated she could not believe what was happening and told Woods to stop. Woods then pulled her pants down, put his hand over her mouth, and told her if she did not shut up he would call for help from upstairs. He said his uncles would hold her down for him. He then forced her to have sexual intercourse with him against her will. This evidence is sufficient to convict Woods, so the trial court abused no discretion when it refused the circumstantial evidence portion of his instruction.

### F.

The trial court gave State's Instruction No. 8, which reads:

In clothing those charged with crime with the presumption of innocence, the law does not contemplate that thereby the guilty should be shielded from merited punishment. Its object is to protect the innocent, so far as human agencies can, from the effects of unjust verdicts. The effect of this presumption is to withhold punishment from one charged with a crime until all the facts necessary to constitute the offense have been proved to that degree of certainty fixed by law as being beyond a reasonable doubt.

If the State has failed to prove the defendant guilty beyond a reasonable doubt, he should not be convicted, but if a defendant has been proved guilty beyond a reasonable doubt, he should not be acquitted erroneously.

Woods claims the instruction is argumentative and prejudicial.

Our supreme court approved of such an instruction in *Hicks*, 536 N.E.2d 496. Recently, however, that court recommended that such an instruction not be used in future cases. *Spradlin v. State* (1991), Ind., 569 N.E.2d 948. The *Spradlin* majority relied upon the dissent in *Heald v. State* (1986), Ind., 492 N.E.2d 671, which stated that such instructions are prejudicial and should be discouraged. The dissent also stated, however:

If this instruction does not constitute reversible error in the instant case in view of the other instructions, we should at least condemn its use in the future.

492 N.E.2d at 686. The *Heald* majority found no error in giving the instruction because the trial court had also given preliminary instructions on the presumption of innocence and the burden of proof on the State. Essentially, the additional instructions removed any prejudice the erroneous instruction could have injected into the proceedings.

The trial in the present case was held early in January 1991. *Spradlin* was decided later on April 15, 1991. Our supreme court's recommendation that the instruction not be used in the future does not apply here because the instruction here was given before *Spradlin* was decided.

Although the instruction here was erroneous, we believe, as contemplated by the dissent in *Heald*, that "this instruction does not constitute reversible error in the instant case in view of the other instruc-

tions" given at trial. The trial court also instructed the jury as follows in Court's Instruction No. 4:

> Under the law, you must presume that the defendant is innocent, and must continue to do so throughout the trial, unless the State proves every essential element of the crime with which the defendant is charged beyond a reasonable doubt.
>
> Because he is presumed to be innocent, the defendant is not required to present any evidence to prove his innocence or to provide any explanation. If, at the end of the trial, you have a reasonable doubt concerning the defendant's guilt, you must find him not guilty.

This instruction eliminated the prejudice associated with the erroneous instruction. Woods has therefore failed to show an abuse of the trial court's discretion on this issue.

### G.

 Woods objected to a portion of the trial court's instruction which stated that a reasonable doubt is not a doubt based upon imagination or speculation. The instruction apparently came from Indiana's pattern jury instructions. He claims the phrase is argumentative and prejudicial. The instruction was proper. *See Kennedy v. State* (1886), 107 Ind. 144, 6 N.E. 305.

### H.

Woods objected to the mandatory nature of the last two paragraphs of the State's instruction on the elements of the crime of rape:

> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.
>
> If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty.

Woods claims the language of the instruction directed the jury to convict him. We note, however, the use of the word "should" in the instruction is not mandatory. The instruction informed the jury of its duty to convict Woods if it found the elements proved beyond a reasonable doubt. The instruction did not bind the minds and consciences of the jury to return a guilty verdict. The instruction is consistent with the decisions of our supreme court. *See Pritchard v. State* (1967), 248 Ind. 566, 230 N.E.2d 416.

Judgment affirmed.

STATON and HOFFMAN, JJ., concur.