Aaron L. COLEMAN, Appellant–
Defendant Below,

v.

STATE of Indiana, Appellee–
Plaintiff Below.

No. 20A03–9304–CR–131.

Court of Appeals of Indiana,
Third District.

March 23, 1994.

Transfer Denied May 19, 1994.

R. Brent Zook, Goshen, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Aaron Coleman appeals his conviction of burglary, a Class C felony.[1] He presents two issues for our review:

I. Whether Coleman knowingly, intelligently and voluntarily waived his right to counsel.

II. Whether the trial court committed fundamental error in instructing the jury.

We affirm.

The evidence most favorable to the State discloses that Coleman and Larry Dunfee planned to burglarize Cast Products in Elkhart, Indiana to obtain copper and money. Coleman broke into the Cast Products building while Dunfee waited outside in Coleman's vehicle. Dunfee was apprehended at the burglary scene and provided information which led to Coleman's arrest.

I.

*Waiver of Right to Counsel*

Coleman represented himself at trial, with the assistance of appointed stand-by counsel. He now contends that his waiver of his right to representation by counsel was involuntary because the trial court's advisement concerning self-representation was inadequate.

In *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, the Supreme Court held that the right to counsel guaranteed by the Sixth Amendment to the United States Constitution guaranteed an ac-cused the right to represent himself. However, the election for self-representation must be made voluntarily and intelligently. The record must affirmatively disclose that the defendant is aware of the implications, consequences and risks of self-representation. *Leonard v. State* (1991), Ind., 579 N.E.2d 1294, 1295.

The trial court must conduct a hearing to determine the defendant's competency to represent himself and to establish a record of the waiver. *Martin v. State* (1992), Ind.App., 588 N.E.2d 1291, 1293. The court may inquire into the defendant's educational background, familiarity with legal procedures and general mental capabilities. However, no specific requirement to explore each of these areas is imposed upon the trial court. It is sufficient if the record reveals that a defendant has been apprised of the advantages of representation by counsel and the pitfalls of self-representation but nevertheless voluntarily, knowingly and intelligently chooses self-representation. *Id.*

At a pre-trial hearing, Coleman requested that he be allowed to represent himself. In response to the trial court's inquiries, Coleman stated that he had completed high school and could read, write and understand English. He indicated his awareness that he was charged with committing a Class C felony and faced a potential penalty of eight years imprisonment.

The trial court advised Coleman that he would be treated as if he were an attorney and that he would be responsible for making arguments, questioning witnesses and selecting jurors. The court indicated that he could not explain evidentiary objections to Coleman. Finally, the court advised Coleman that he could not testify during his final argument, but was responsible for arguing the merits of his defense and attacking any defects in the State's case. The court appointed stand-by counsel "to answer Coleman's questions." Supp.Record, p. 7.

The record reveals that Coleman was adequately advised of the consequences of self-

1. IND.CODE 35–43–2–1.

representation. His waiver of representation by counsel was knowing and voluntary.

## II.

### Jury Instruction

Coleman challenges certain language included within Preliminary Instruction 7 and Final Instruction 11:

"*A reasonable doubt is an actual and substantial doubt* that arises in the mind after a fair and impartial consideration and weighing of all the evidence and circumstances in the case.... [I]t is your personal *duty to vote for conviction as long as you are convinced beyond a reasonable doubt of the defendant's guilt as charged.*"

Record, pp. 352–53.

 Coleman lodged no objection to the foregoing instruction; therefore, our review is limited to ascertaining whether fundamental error was committed. *Faulisi v. State* (1992), Ind.App., 602 N.E.2d 1032, 1038, *trans. denied.* Fundamental error is error so blatant and prejudicial that, if not corrected, it would deny the defendant due process. *Id.*

 Coleman admits that the giving of mandatory instructions concerning the duty to convict upon proof of guilt beyond a reasonable doubt is not fundamental error. *Barker v. State* (1982), Ind., 440 N.E.2d 664, 670–71, *reh. denied.* By his failure to interpose a trial objection to the language "[I]t is your personal duty to vote for conviction as long as you are convinced beyond a reasonable doubt of the defendant's guilt," Coleman has waived his right to challenge that language on appeal.

However, Coleman contends that the portion of the instruction equating a "reasonable doubt" with a "substantial doubt" allowed a finding of guilt based upon a degree of proof below that required by the Due Process Clause. He relies upon *Cage v. Louisiana* (1990), 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339, wherein the Supreme Court stated:

"It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard."

*Id.* at 40, 111 S.Ct. at 329–30.

 Although the use of the word "substantial" suggests a higher degree of doubt than that properly required for acquittal, here the constitutional error is harmless beyond a reasonable doubt.

 Fundamental error in giving instructions is subject to a harmless error analysis. *Collins v. State* (1991), Ind., 567 N.E.2d 798, 801. This court must review the record in its entirety to determine whether, based upon the evidence presented, an honest and fair-minded jury would have rendered a guilty verdict absent the use of the erroneous instruction. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Larimer v. State* (1975), 163 Ind.App. 673, 326 N.E.2d 277, 279.

The evidence of Coleman's guilt is overwhelming. The instruction did not contribute to his conviction.

Brian Conwell, accounting controller of Cast Products, testified that he arrived at work on November 7, 1991 and discovered that a window had been broken and a cash box was missing.

Larry Dunfee testified that, while he and Coleman were residents at the Faith Mission in Elkhart and temporary employees of Cast Products, they planned a burglary of Cast Products. Dunfee further testified that he waited in Coleman's vehicle while Coleman executed the burglary plan in the following manner. Coleman proceeded toward the Cast Products building and shortly thereafter returned to the vehicle. He indicated that he had broken a window and needed to determine if an alarm was activated. After a lapse of time, Coleman again entered the Cast Products building. He returned with a cash box containing a small amount of money. Expressing dissatisfaction with his bounty, Coleman again proceeded toward Cast Products building. Dunfee panicked when another vehicle appeared, turned on the lights in a futile attempt to signal Coleman, backed the vehicle into a building, exited and began to run. Coleman appeared and encouraged Dunfee to walk and "follow him";

however, Dunfee continued to flee and was apprehended by police officers.

An honest and fair-minded jury would have rendered a guilty verdict under these circumstances; the use of the challenged instruction was harmless error.

Affirmed.

RUCKER, J., concurs.

HOFFMAN, J., dissents and files separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. Coleman asserts that the trial court improperly instructed the jury regarding reasonable doubt. In relevant part, the court instructed the jury:

"The burden of proof is upon the State of Indiana to prove the defendant guilty beyond a reasonable doubt.

The rule of law touching reasonable doubt is a practical rule for the guidance of practical men and women when engaged in the solemn duty of assisting in the administration of justice. It is not a rule, therefore, about which there is anything mysterious or fanciful.

A reasonable doubt is an actual and substantial doubt that arises in the mind after a fair and impartial consideration and weighing of all the evidence and circumstances in the case. Not every doubt is a reasonable one. In order that there can be such doubt, it must be based upon some reason arising out of the evidence, or lack of evidence, concerning the essential elements of the case. You may not act upon a mere whim, speculation, guess or surmise, and you may not convict upon a mere possibility of guilt.

Before you can find the defendant guilty as charged, the evidence in the case must produce in your own mind such a firm belief of guilt that you would be freely willing to act upon that belief in any matter of the highest concern and importance to your own dearest interest.

This rule on reasonable doubt applies to each of you individually and it is your personal duty to refuse to convict as long as you have a reasonable doubt as to the defendant's guilt as charged. Likewise, it is your personal duty to vote for conviction as long as you are convinced beyond a reasonable doubt of the defendant's guilt as charged."

It is true that Coleman did not lodge objections to the jury instructions. However, as noted by Coleman, prior to commencement of the trial, the court dictated the following docket entry which did not allow him an opportunity to object to the jury instructions at the time the instructions were being reviewed:

"THE COURT: Okay. A.J., I suppose you should know this, this should be 91–CF–070, cause coming on for trial, defendant appears in open court with his stand-by counsel, Mr. Razo, present Mr. Sanders, Deputy Prosecuting Attorney, the Deputy Sheriff and other law enforcement officers.

Ah, regular members of the venire for this term now appear and are sworn. Parties conduct voir dire examination, ah, and now accept the jury which consists of the following members, to-wit: (H.I.) Ah, remaining members of venire now released. Jury is now sworn.

Ah, then you can show instructions read. Parties make opening statements. Ah, State conducts it's case-in-chief and rests. I assume that that's as far as we'll get today.

MR. SANDERS: I believe that's correct, Judge.

THE COURT: And, also show parties waive any objections to the court's preliminary instructions. You have no objection to them, do you?

MR. COLEMAN: No.

THE COURT: These are standard. Okay, Karen. That will just kind of give you the docket sheet entry to start with to save you—me having to re-dictate it if I do it that way."

The trial court's proposed final instruction on reasonable doubt differs from the final instruction which was actually read to the jury. The last paragraph of the instruction set out above was read to the jury, but did not appear in the proposed final instructions.

Coleman urges that the use of the term "substantial" in the definition of reasonable doubt impermissibly quantified the amount of doubt necessary for acquittal. Also, Coleman contends the extra paragraph in the instruction read to the jury constitutes mandating language which invades the province of the jury. Additionally, Coleman notes that similar mandating language stating, "[i]f all the material allegations of the information have been so proved, it is your duty to convict the defendant" appears in another instruction.

First, the instruction on reasonable doubt defines such doubt as "actual" and "substantial." The United States Supreme Court addressed the use of the term "substantial" when defining "reasonable doubt" in *Cage v. Louisiana* (1990), 498 U.S. 39, 40–41, 111 S.Ct. 328, 329–330, 112 L.Ed.2d 339 *per curiam*. There, the reasonable doubt instruction in question defined "reasonable doubt" as "actual substantial doubt." Further, as noted by the State, it equated such doubt with "grave uncertainty" and required "moral certainty." The court stated:

> "It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause."

*Id.*, 498 U.S. at 40, 111 S.Ct. at 329–330.

Because the trial court did not use the "grave" and "moral certainty" references, the State requests a finding that the instruction did not violate the dictates of *Cage*. However, the court's condemnation of the term "substantial" requires a finding that the instruction does not correctly state the law. Further, as noted by the court, the precepts of due process in a criminal trial rest primarily upon the "reasonable doubt" standard. *Id.*, 498 U.S. at 39–40, 111 S.Ct. at 329. Here, the use of the term "substantial" in the definition of reasonable doubt requires reversal.

Further, as alleged by Coleman, our supreme court has disapproved of instructions mandating conviction. *See e.g. Mitchem v. State* (1987), Ind., 503 N.E.2d 889, 890–891 (instruction may say "should" convict if first outlines elements which must be proven and states that jurors are triers of fact and law; however, absent qualifications would be reversible error as a mandatory instruction which would bind minds and consciences of jury to return a verdict of guilty thereby invading province of jury); *Pritchard v. State* (1967), 248 Ind. 566, 568–576, 230 N.E.2d 416, 417–421 (erroneous instruction stated "you shall find such defendant guilty" if certain evidence was found beyond a reasonable doubt). Coleman and the State note that the court has held that similar instructions did not constitute fundamental error. *See Barker v. State* (1982), Ind., 440 N.E.2d 664, 671; *Taylor v. State* (1981), Ind., 420 N.E.2d 1231, 1236. However, here, portions of the reasonable doubt instruction did not correctly state the law thereby compounding the problem. *Cf. Woods v. State* (1992), Ind. App., 587 N.E.2d 718, 724–725 (use of portion of reasonable doubt instruction which had been condemned not reversible error because jury properly instructed on other aspects of reasonable doubt). Accordingly, the trial court erred in stating that the jury had a "duty" to convict.

Because ample evidence supports the jury's verdict, I would vote to reverse the conviction and remand the cause for retrial.