Robert Ragland SMITH, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 10A04–9101–CR–4.

Court of Appeals of Indiana,
Fourth District.

Feb. 17, 1992.

Vicki L. Carmichael, Chief Public Defender, Jeffersonville, for appellant, defendant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Thirty-two year old Robert Ragland Smith had the misfortune of participating in the sale of a mixture of aspirin and flour, which was represented as cocaine, to an undercover police officer. He was convicted by a jury of Dealing in a Substance Represented to be a Controlled Substance, a Class D felony.[1] Smith was also found to be an habitual offender. He was sentenced to a term of eighteen months on the dealing charge and an additional twenty years on the habitual offender finding.

### ISSUES

I. Whether there was sufficient evidence to support the conviction of Dealing in a Substance Represented to be a Controlled Substance.

II. Whether Smith was denied due process when the state recovered a previously misplaced tape recording of the dealing transaction thereby negating the defense of negligently misplaced evidence.

III. Whether Smith's habitual offender sentence was excessive and not supported (by the judge) by sufficient reasons.

We affirm.

### FACTS

The evidence most favorable to the verdict shows that on January 3, 1990, Robert Smith and his accomplice Mabrin Davey sold a substance represented as cocaine to undercover Officer John Kahafer, Clark County Police Department. Kahafer had just finished another drug transaction and was still wearing a "body bug" transmitter, which permitted the undercover officer to communicate with other officers stationed nearby. A tape recording was made of the transmissions.

Kahafer was informed by a confidential informant that a man wanted to sell cocaine. The informant met Kahafer in a tavern and introduced him to Mabrin Davey. The informant then left the bar stating that he did not want to get further involved. Davey asked Kahafer, "What do you want to do?" R. 249. When Kahafer responded that it depended on the price, Davey replied, "I'll get you an eightball for 220." R. 249. Kahafer agreed and left with Davey.

Davey asked Kahafer to drive to a particular location. When they arrived, Davey left the car and walked between two buildings. He returned and informed Kahafer that "the stuff's not ready yet." R. 250–251. When Kahafer and Davey returned a short time later, Davey again left the car. He returned saying, "It's ready now", and instructed Kahafer to drive around the block. R. 252. Once there, Davey left the car and walked around the corner. He immediately returned, accompanied by defendant Smith. Smith walked to Kahafer's car, leaned down and asked what Kahafer wanted to do. Kahafer responded that he wanted "to do an eightball." R. 255. Smith stood and said to Davey, "I'll deal with you, I don't want to deal with him [Kahafer]." R. 255. When Kahafer indicated he had no objection, Smith and Davey stepped a few feet away from Kahafer where Smith handed something to Davey. After the transfer, Kahafer testified he heard Smith ask Davey, "How's the money going to go on this?" R. 257. Davey responded, "200 for you and 20 for me for setting up the deal." R. 257. Davey returned to Kahafer who gave him $220 and Davey gave Kahafer a small plastic bag with white powder.

---

1. Ind.Code 35–48–4–4.5(a).

After the exchange, other officers stationed in vehicles nearby came to the scene and arrested Smith and Davey. Kahafer stated the men were under arrest and grabbed Smith. Davey fled. Smith stated, "You all set me up, you want the other guy, not me." R. 263. Smith then informed the officers that the bag contained only flour and aspirin. A forensic chemist testified at trial that the powder was not a controlled substance and that it reacted to some of the tests in the same manner as aspirin.

Kahafer's transmissions via his body wire of the transaction were tape recorded by Officer Kramer in a nearby van. After the arrest, Kramer gave the tape to Kahafer who put it away to transcribe later. The tape was misplaced and was not available for either the defense or the State at the beginning of trial. Counsel for Smith sought to prohibit officers from mentioning the tape and its contents in a suppression hearing. Kahafer offered his belief that the tape was lost or misplaced. The trial court granted the defense motion and ruled that the officers could testify that a tape had been made, but they could not testify to what the tape would reveal if found.

After the State presented its case-in-chief, the tape was discovered on a desk in the police department's property room. When the State requested permission to reopen its case-in-chief to admit the tape, Smith's defense counsel objected for several reasons: 1) defense counsel had been advised before trial that a diligent search for the tape had not been productive; 2) the tape was inadmissible due to its poor quality and irrelevant passages; and 3) the evidence on the tape was cumulative. After hearing the poor quality of the tape and finding it contained totally irrelevant passages, the court denied the State's motion to reopen its case.

## I. SUFFICIENCY OF THE EVIDENCE

■ Smith claims that the State did not prove beyond a reasonable doubt that he knowingly and intentionally delivered the substance.

Ind.Code 35–48–4–4.5 states, in pertinent part:

"(a) A person who knowingly or intentionally delivers or finances the delivery of any substance, other than a controlled substance or a drug for which a prescription is required under federal or state law, that:

(1) is expressly or impliedly represented to be a controlled substance;

(2) is distributed under circumstances that would lead a reasonable person to believe that the substance is a controlled substance; or

(3) by overall dosage unit appearance, including shape, color, size, markings, or lack of markings, taste, consistency, or any other identifying physical characteristic of the substance, would lead a reasonable person to believe the substance is a controlled substance;

commits dealing in a substance represented to be a controlled substance, a class D felony."

■ Smith acknowledges that when reviewing a claim of insufficient evidence we will 1) not weigh evidence nor judge the credibility of witnesses; 2) only consider that evidence and all reasonable inferences therefrom which support the verdict; and 3) affirm the judgment if there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt. *Taylor v. State* (1987), Ind., 514 N.E.2d 290.

As noted earlier, the facts most favorable to the verdict reveal that Smith implicitly represented the substance to be a controlled substance—cocaine. Smith approached Officer Kahafer and asked him what he "wanted to do". (R. 254). Kahafer replied that he wanted to do an eight ball, which is slang for an eighth of an ounce of cocaine. Smith then stood and told Davey that he would deal with Davey but not with Kahafer. Smith and Davey stepped a few feet away where Smith handed something to Davey. Smith asked Davey about the money. Davey told Smith that Smith would get $200 and that he would get $20 for setting up the deal. Ka-

hafer gave Davey $220 and Davey handed him a small bag which contained white powder. Additionally, after his arrest, Smith told the officers that there was only flour and aspirin in the bag.

Smith cites *Pryor v. State* (1973), 260 Ind. 408, 296 N.E.2d 125, to support his assertion that the evidence is insufficient to show that he was involved in the delivery of the substance. Pryor stood by while others sold an undercover officer a substance represented to be marijuana. Pryor's sole involvement in the transaction was his statement to the undercover officer that the substance was "good weed". Our supreme court states:

> "We do not think that a bystander commenting upon the quality of goods offered for sale, without performing any further actions or making any further statements at the time, is making an offer under the statute."

*Id.* at 413, 296 N.E.2d 125 at 127. *Pryor* is factually distinguishable. Smith's involvement in the transaction is much greater than Pryor's. He was obviously not just a bystander but, rather, an active participant.

Moreover, we agree with the State's argument that even if the evidence did not show that Smith transferred the bag containing the white powder to Davey, Smith would still be criminally responsible because the evidence shows that he was acting in concert with Davey. *See Spurlock v. State* (1987), Ind., 506 N.E.2d 40. It does not need to be proven that a defendant acting in concert with others committed each element of the offense himself. *Id.*

For the foregoing reasons, the evidence was sufficient.

## II. MISSING TAPE

Officer Kahafer was wearing a "body bug" that taped the transaction with Smith and Davey. The tape was lost before trial. The court granted Smith's motion to prohibit the officer's from testifying about the contents of the tape. However, the officers were allowed to testify about the conversations and that a tape had been made.

After the State rested, the missing tape was found and the parties listened to it. The State then moved to reopen its case-in-chief and to introduce the tape into evidence. Smith objected, arguing that much of the tape was inaudible and that portions of the tape had no relevancy to the case. The court agreed with Smith and denied the State's motion.

■ Smith now argues that he was denied due process when the police found the missing tape because his case had been prepared based upon a theory of police negligence. Smith points out that the negligent destruction or withholding of material evidence by the police or prosecution may present grounds for reversal because it denies due process under the fourteenth amendment and Ind. Const. art. I, § 12; *Lee v. State* (1989), Ind., 545 N.E.2d 1085; and *Birkla v. State* (1975), 263 Ind. 37, 323 N.E.2d 645. Smith also argues that his defense counsel prepared a defense on the theory that the police officers had negligently destroyed the best evidence of what occurred and that, if there had been incriminating evidence on the tape, the police would not have been so careless with it. He claims his counsel was deprived of this theory and his due process rights were violated because the police withheld the tape until after the close of the State's case-in-chief.

We agree with the State's argument that there is no reversible error because Smith has not shown materiality and prejudice, which is required to prevail on a claim of negligently misplaced or destroyed evidence. *See Birkla, supra; Lee, supra.* In the instant case, when the tape was found it was produced for the parties to hear. Smith objected to the reopening of the State's case and admission of the tape into evidence because much of it was inaudible and parts of it were irrelevant. Therefore, Smith has not shown materiality or prejudice.

■ State cites *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281, where the police failed to properly preserve evidence for later identification tests and defendant claimed he was

thereby denied due process. The Supreme Court described the police conduct in that case as "at worst negligent," but held that unless a defendant can show bad faith on the part of the police, a failure to preserve potentially useful evidence does not constitute a denial of due process. We agree with the State's argument that, in this case, Smith has not shown such bad faith on the part of the police.

For the foregoing reasons, we find that Smith was not denied due process.

### III. MANIFEST UNREASONABLENESS & FAILURE TO LIST AGGRAVATING FACTORS WHEN SENTENCING SMITH AS A HABITUAL OFFENDER

Smith argues that: 1) his habitual offender enhancement was manifestly unreasonable; and 2) the court erred by failing to list aggravating factors to support his habitual offender enhancement of twenty years.

■ If this case involved only the three offenses which established Smith's habitual offender status, we would agree that the enhancement was manifestly unreasonable under the standards of *Wilson v. State* (1992), Ind., 583 N.E.2d 742 (Givan, J. dissenting). However, Smith's record of criminal activity distinguishes his case from *Wilson*.

In *Wilson*, the court found that a thirty year enhancement was manifestly unrea-

sonable in light of the nature of the offense and the character of the forty-eight year old offender because 1) Wilson's current offense of theft (committed in 1988) was a Class D felony; 2) a previous felony, possession of marijuana (committed in 1982), was a Class D felony; 3) the other previous felony, armed robbery, was committed in 1965, twenty-three years before the current felony and before his successful completion of his 1970 parole; and 4) following that event Wilson went seven years without an arrest and his later "convictions for keeping a dive and possession of marijuana do not show a return to violent conduct". *Id* at 744. The court also noted that before the armed robbery conviction, Wilson had been convicted of two earlier felonies—vehicular theft in 1961, and third degree burglary in 1964. We further note that the court did not address with any specificity Wilson's character—things such as his family situation and his employment history. In this scenario, our supreme court reduced the habitual offender enhancement by twenty years—from thirty years to ten years.

In the instant case, like in *Wilson*, both Smith's current offense and one of the previous offenses were Class D felonies. Accordingly, under Ind.Code 35–50–2–8, our habitual offender statute, the trial court could have given Smith an habitual offender enhancement between five and thirty years.[2]

---

2. Ind.Code 35–50–2–8 reads in pertinent part as follows:

"(e) The court shall sentence a person found to be an habitual offender to an additional fixed term of thirty (30) years imprisonment to be added to the term of imprisonment imposed under section 3, 4, 5, 6, or 7 of this chapter. If the court finds that ten (10) years or more have elapsed between the date the person was discharged from probation, imprisonment, or parole (whichever is later) for the last prior unrelated felony conviction and the date the person committed the felony for which the person is being sentenced as an habitual offender, then the court may subtract up to twenty-five years (25) years from the additional fixed term of thirty (30) years. If at least one (1) of the offenses relied upon to establish that the person has accumulated two (2) prior unrelated felonies is a Class D felony, then the court may subtract up to ten (10) years from the additional

fixed term of thirty (30) years. If the felony for which the person is being sentenced is a Class D felony, then the court may subtract up to twenty (20) years from the additional fixed term of thirty (30) years.

*"(f) Notwithstanding the court's authority to reduce the additional fixed term of Thirty (30) years imprisonment under subsection (e), if a person is found to be an habitual offender under this section, the court shall sentence the person to an additional fixed term of at least five (5) years imprisonment to be added to the term of imprisonment under section 3, 4, 5, 6, or 7 of this chapter.*

"(g) If a reduction of the additional thirty (30) year fixed term is authorized under subsection (e), the court may also consider the aggravating or mitigating circumstances in IC 35–38–1–7.1 to:

(1) decide the issue of granting a reduction; or

Smith's pre-sentence report reveals the following:

"80–CR–71—Burglary (C felony)—2–23–81; sentenced to serve 5 years served 30 months.

84–M–481; 85–M–15 (Dealing/Possession of Hashish)

85–M–358 (Aiding in Commission of a Crime). Two years suspended on 85–M–358. 84–M–481, 85–M–15: 1 year suspended on both all concurrent.

8–16–86—Probation revoked; ordered to serve remainder of time.

10E01–9005–CF–303—Theft by Receiving Stolen Property (D felony); Driving Under Suspension (A Misdemeanor); Habitual Felony Offender. 7–12–90; Dismissed by State."

(R. 89). Additionally, the pre-sentence report discloses that Smith had the following charges pending at the time of his sentencing in the instant case: 1) two charges of Conversion, Class A misdemeanor (December 1987); 2) three charges of Theft, Class D felony (June 1988, January 1989, and July 1990); and 3) Driving Under Suspension, Class A misdemeanor (July 1990).[3]

(2) determine the number of years, if any, to be subtracted under subsection (e).

"(h) A person may not be sentenced as an habitual offender under this section if all of the felonies relied upon for sentencing the person as an habitual offender are Class D felonies."

Section (e) presents three situations in which the court may give an enhancement less than the thirty year maximum:

1) if more than ten years have elapsed between the current underlying conviction and the date the person was discharged from probation, imprisonment, or parole (whichever is later) for the last prior unrelated felony conviction—reduction up to twenty-five years;

2) if (as in the instant case) one of the offenses relied upon was a Class D felony—reduction up to ten years; and

3) if (as in the instant case) the underlying offense is a Class D felony—reduction to twenty years.

Obviously, none of these situations alone would reduce the sentence more than twenty-five years. However, when section (e) is read with section (f) which states that notwithstanding section (e) anyone found to be an habitual offender, under IC 35–50–2–8, must receive a minimum sentence of at least five years, it is clear that the three options under section (e) are conjunctive. Section (f) would have no purpose and would be a useless piece of legislation unless the options under section are read as being cumulative. *See State ex rel. Hatcher v. Lake*

Smith's record of continual clashes with the law over the past ten years, despite having served time on two occasions (one a violation of probation) plus the fact that Smith could only show that he had been gainfully employed during a one year period (in a variety of jobs) convinces us that this case is clearly distinguishable from *Wilson*, where the major crimes occurred in the distant past. Our supreme court has held that the maximum enhancement—thirty years—was not an abuse of discretion where the defendant's current offense took place only six months after his release from prison. *Stanley v. State* (1987), Ind., 515 N.E.2d 1117. Under the facts here, we do not find that the enhancement was manifestly unreasonable.

▪ Smith does not provide us with authority and cogent argument to support his contention that the court erred in his habitual offender sentencing by providing inadequate reasons for the enhancement selected.[4] An issue which is not supported by authority and cogent argument is waived. Ind.Appellate Rule 8.3(A)(7).

*Superior Court* (1986), Ind., 500 N.E.2d 737 (it cannot be presumed that the legislature intended to create a statute that has useless provisions). Accordingly, Smith (with both the second and third options under section (e) applicable) could have up to twenty-five years subtracted from the fixed thirty year enhancement because the two options together allow the court to subtract up to thirty years but subsection (f) provides for a minimum enhancement of at least five years.

3. A sentencing court may consider prior criminal conduct which has not been reduced to a conviction. *Creasy v. State* (1988), Ind., 518 N.E.2d 785.

4. Smith does cite a few cases, claiming that they are authority for his position on this issue. However, all of these cases stand for the proposition that a listing of aggravating factors is required when a judge deviates from the presumptive term in a felony conviction. In the instant case, Smith's twenty year enhancement comes from the habitual offender statute, not from the Class D felony statute. While it may be possible to argue that the reasoning behind those cases is also applicable to the habitual offender statute, Smith does not provide us with any cogent argument which makes that connection.

Even if the issue had not been waived, the trial court did not fail to give adequate reasons for the enhancement. Though it could have been more specific, the court stated adequate reasons.[5] The court said:

"Alright, the Court will now impose sentencing. The sentence for the offense of Dealing in a Substance represented to be a Controlled Substance, absent any consideration of the Habitual Offender finding, would be the presumptive sentence of eighteen (18) months. Considering the enhancement which follows from the facts that have been shown in the Pre–Sentence and the finding of the Habitual Offender status, the Court will make use of the provision which gives it the authority to reduce from the thirty (30) years which could result and although its been said that there are no mitigating circumstances and while it may be there are none just looking at the factors which are enumerated there. Something which is going to come somewhat in your favor at this time, Mr. Smith, is the fact that I don't see that there has been a pattern of violence here, there's been a pattern of breaking the law and there's been a pattern of things which could lead to violence uh, violence that could have resulted in an end to you or a problem for other people in the past, but thank goodness, I don't see a thing here where there has been a, a type of vicious violence that occurs in some situations and as is shown by the pattern of offenses that some people exhibit. But, there has been a pattern of breaking the law, it is a fact, unfortunately, that a small number of people commit a very large percentage of the offenses that come through the courts, and for whatever reason and, and drug problems may be the very reason, you have become one of those individuals in that small minority of people who account for a large percentage of the offenses. So, the reduction from the thirty (30) years that I will apply will be a ten year reduction and the Court will otherwise enhance the sentence for the Dealing in a Substance Represented to be a Controlled Substance by a period of twenty (20) years."

(R. 544–547).

Smith contends that the court's enhancement of his sentence is based solely on the fact that he has committed the three crimes—a situation which we agree would not be an aggravating factor simply because it exists in any habitual criminal charge. However, we believe the judge's comments make it clear that he was aware of the facts set out in the pre-sentence report which make it clear that, in spite of apprehension, punishment and probation revocation, Smith persists in leading a life of crime. We find that Smith's history of continuous criminal conduct throughout almost all of his adult life is a valid reason for the twenty year habitual offender enhancement. *See Stanley, supra.*

For the foregoing reasons, we affirm.

CHEZEM and BUCHANAN, JJ., concur.

---

5. Though we do not have to address the issue (whether the court is required to give specific reasons) to decide this case, we note that the language of the habitual offender statute anticipates the listing of reasons in subsection (g) which states:

"If a reduction of the additional thirty (30) year fixed term is authorized under subsection (e), the court may also consider the aggravating or mitigating circumstances in IC 35–38–1–7.1 to:
(1) decide the issue of granting a reduction; or
(2) determine the number of years, if any, to be subtracted under subsection (e)."

We also note that appellate review of sentences is facilitated when reasons are given for the enhancement.