**John G. RITA, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A03–9506–CR–185.

Court of Appeals of Indiana.

April 18, 1996.

Rehearing Denied Aug. 17, 1996.

Charles A. Asher, South Bend, for appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Office of Attorney General, Indianapolis, for appellee.

## OPINION

GARRARD, Judge.

John G. Rita was charged below with failure to stop at the scene of a fatal accident and with driving with a blood alcohol content (b.a.c.) in excess of .10%, resulting in the death of another person. Rita was acquitted of the second charge, but the jury was unable

to reach a verdict on the first charge. After the State filed an amended information, the trial court, pursuant to Ind. Appellate Rule 4(B)(6), certified four issues for interlocutory appeal, which we address as follows:

I. Whether the State's alleged failure to properly preserve or negligent destruction of material evidence denied Rita due process under the Fourteenth Amendment and Ind. Const. art. I, § 12.[1]

II. Whether the trial court erred in permitting the State to amend the information after the first trial.

III. Whether the trial court erred in allowing the State, but not the defense, to use subpoenas to take *ex parte* statements from witnesses.

## FACTS

On November 13, 1993, Rita was driving a vehicle which struck and killed Mara Fox. The accident occurred at approximately 12:20 a.m. on a rainy and foggy evening. Rita failed to stop at the scene but did pull over a short time later. He and his passengers observed that the windshield had been fractured and that the right-front section of the car had been damaged. Rita returned to his apartment and fell asleep while his friends notified the police, and Rita was subsequently arrested.

At trial, a key issue was the visibility of the fracture to the windshield. Three days after the accident, the prosecutor had the windshield removed from the vehicle without notice to Rita or the court. Rita learned of the removal a few months later when he sought to conduct various tests on the vehicle. As the windshield could not be replaced in the vehicle, this opportunity was lost. Over Rita's objections, the State was permitted to introduce as evidence at trial the windshield itself and several photographs taken before and after its removal. In its ruling denying Rita's motion to dismiss the information, the court stated in part:

[The decision to remove the windshield] does not in any way appear to have been done in bad faith. It was not expected to

play a significant role in the way now contemplated by defendant for testing purposes. The defendant can perform many tests on a similar vehicle but not with a windshield damaged in exactly the same way.... [U]pon these facts there is not a denial of due process of law.

(R. 298–99). At trial, Rita was acquitted of the charge of causing a death while driving with a b.a.c. in excess of .10%, and the jury was unable to reach a verdict on the charge of knowingly leaving the scene of a fatal accident. Rita now brings this interlocutory appeal.

## ISSUE I

■ Rita argues that the trial court erred in denying his motion to dismiss and, alternatively, in refusing to exclude the State's evidence regarding the broken windshield and in refusing to give Rita's jury instruction regarding the windshield. We find no error.

■ The defendant in a criminal case has the right to examine physical evidence in the hands of the prosecution. *Turnpaugh v. State*, 521 N.E.2d 690, 692 (Ind.1988), citing *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967). The negligent destruction or withholding of material evidence by the police or prosecution may present grounds for reversal because it denies due process under the Fourteenth Amendment and the Ind. Const. art. I, § 12. *Lee v. State*, 545 N.E.2d 1085, 1089 (Ind.1989); *Smith v. State*, 586 N.E.2d 890, 893 (Ind.Ct.App.1992). However, in *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the United States Supreme Court held that the failure of police to preserve potentially useful evidence was not a denial of due process of law absent the defendant's showing of bad faith on the part of the police. The Supreme Court indicated its unwillingness to read the fundamental fairness requirement of the Due Process Clause as imposing on police an undifferentiated and absolute duty to retain and preserve all material that might be of con-

---

1. This issue encompasses the following claimed errors: the court's failure to exclude certain evidence, the failure to give Rita's offered jury instruction regarding this evidence, and the failure to dismiss the remaining charge against Rita.

ceivable evidentiary significance in a particular prosecution. *Id.* at 58, 109 S.Ct. at 337.

██ Our supreme court has clearly stated that, absent a showing of bad faith on the part of the police, the failure to preserve evidence does not constitute a denial of due process of law. *McGowan v. State,* 599 N.E.2d 589, 594 (Ind.1992). Indeed, numerous Indiana cases have applied the bad faith requirement in cases involving the negligent destruction of evidence. *See Bivins v. State,* 642 N.E.2d 928 (Ind.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996) (loss or destruction of audio tape recordings of defendant's interrogation, which would have provided material evidence, did not violate due process where defendant failed to demonstrate bad faith on the part of police in failing to preserve the tape); *Nettles v. State,* 565 N.E.2d 1064 (Ind.1991) (failure to preserve blood samples for defendant to test did not constitute denial of due process where there was no showing of bad faith); *Vaughn v. State,* 559 N.E.2d 610 (Ind. 1990) (failure to preserve notebook which defendant alleged may have contained exculpatory evidence was not reversible error where no showing of bad faith); *Curry v. State,* 643 N.E.2d 963 (Ind.Ct.App.1994), *reh'g denied, trans. denied* (State's destruction of adult diaper and laundering of undergarments did not violate due process where State did not perceive evidentiary value to the defense at time of destruction and there was no evidence of bad faith); *Smith v. State,* 586 N.E.2d 890 (Ind.Ct.App.1992) (tape recording of conversation which was lost and then found during trial did not result in reversible error where no bad faith shown on the part of police); *Glasscock v. State,* 576 N.E.2d 600 (Ind.Ct.App.1991), *reh'g denied, trans. denied* (hospital's destruction of blood samples did not present grounds for reversal where State did not possess the evidence and there was no showing of bad faith); *Everroad v. State,* 570 N.E.2d 38 (Ind.Ct.App. 1991), *aff'd in part, vacated in part on other grounds,* (failure to establish bad faith result-

ed in no error when police failed to test seized contraband for fingerprints);

Here, there is no evidence that the prosecution's decision to remove the windshield was motivated by bad faith. Rather, it appears that the prosecution was attempting to preserve the condition of the windshield. Further, while the evidence demonstrates that the State believed that the windshield was a key piece of evidence, there is no indication that, at the time it was removed, the State understood the type of testing which Rita wanted to perform on the windshield. *See Curry,* 643 N.E.2d at 979 (to meet the standard of constitutional materiality, the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means). In the absence of a showing of bad faith, we find no due process violation.

██ Rita also seems to contend that Indiana cases have drawn a distinction between the failure to preserve material evidence and the destruction of evidence, arguing that "[w]hile the failure of the police or prosecutors to take affirmative steps to seek out and preserve material evidence may constitute a denial of due process only if bad faith is shown ... where the destruction of evidence once in the hands of the police or prosecution is involved, a higher standard has applied for over a quarter of a century in Indiana." (Brief of Appellant at 31).[2] We initially observe that the State did not destroy the windshield; rather, it failed to preserve it in the same condition as at the time of the accident. Secondly, the cases Rita cites to support his argument were decided prior to *Arizona v. Youngblood. See Birkla v. State,* 263 Ind. 37, 323 N.E.2d 645 (1975); *Hale v. State,* 248 Ind. 630, 230 N.E.2d 432 (1967). The cases since *Youngblood* have uniformly applied the bad faith requirement to due process claims involving the failure to preserve evidence or the negligent destruc-

**2.** While citing both the Indiana and United States Constitutions, Rita does not appear to make a separate due process argument under the Indiana Constitution. In any event, we note that the Indiana Due Course of Law requirement is analogous to the Due Process Clause of the Fourteenth Amendment. *Haimbaugh Landscaping, Inc. v. Jegen,* 653 N.E.2d 95, 104 (Ind.Ct.App. 1995), *reh'g denied, trans. denied.*

tion of evidence. We find no basis in the cases cited by Rita to create a distinction between the failure to preserve evidence and the destruction of evidence, as several Indiana cases have applied the bad faith requirement where evidence has been destroyed. *See Bivins*, 642 N.E.2d 928 (loss or destruction of tape recordings); *Curry*, 643 N.E.2d 963 (destruction of adult diaper and laundering of undergarments); *Smith*, 586 N.E.2d 890 (loss of tape recording); *Glasscock*, 576 N.E.2d 600 (destruction of blood samples). By failing to preserve evidence, the State does, in effect, destroy it. Thus, we find the bad faith requirement applicable to the present case.[3]

Given the absence of any bad faith on the part of the prosecution and the police in removing the windshield from Rita's vehicle, we find no error in the court's denial of his motion to dismiss or in the admission of evidence regarding the windshield. Rita also tendered a jury instruction which instructed the jury that, due to the removal of the windshield, it was mandatory that they accept as a fact that the fracture in the windshield was invisible to Rita and his passengers until, essentially, the time that they maintain they first noticed it. The test for reviewing the propriety of the trial court's decision to refuse a tendered instruction is: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Crose v. State*, 650 N.E.2d 1187, 1190 (Ind.Ct.App.1995), *trans. denied.* Rita fails to cite any authority for such a mandatory instruction which would, in the words of the trial court judge, "virtually direct a defense verdict." (R. 337). Fur-

ther, as we have found no error in the admission of the evidence regarding the windshield, the evidence would not support such an instruction. Certainly, Rita may make all permissible arguments supported by the evidence regarding the conditions on the night of the accident and their effect on the visibility of the fracture. However, there is no basis for instructing the jury in the manner set forth in Rita's properly rejected instruction, and we find no error on this issue.[4]

## ISSUE II

Rita next argues that the State substantially amended the information in violation of Ind.Code § 35–34–1–5(b). We find no error in the trial court's ruling.

As a general rule any information may be amended at any time before, during, or after trial as long as the amendment does not prejudice the substantial rights of the defendant. I.C. § 35–34–1–5(a), (c); *Hegg v. State*, 514 N.E.2d 1061, 1063 (Ind.1987); I.C. § 35–34–1–5(a), (c). An information may not be amended to change the theory of the case or the identity of the offense charged. *Wright v. State*, 593 N.E.2d 1192, 1197 (Ind. 1992). However, an information may be amended at any time to cure a defect if the substantial rights of the defendant are not prejudiced. *Id.; Sharp v. State*, 534 N.E.2d 708, 714 (Ind.1989).

The section relied upon by Rita, I.C. § 35–34–1–5(b), permits an amendment in matters of substance or form, upon written notice to the defendant, at any time up to thirty days before the omnibus date in a felony charge. An amendment is of substance only if it is essential to the making of a valid charge of the crime. *Sharp*, 534

3. Rita also argues that there is no requirement under the trial rules that bad faith must be shown in order to remedy a failure to preserve testimony or conduct discovery properly, citing *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175 (Ind.1993); *Mahrdt v. State*, 629 N.E.2d 244 (Ind.Ct.App.1994), *trans. denied.* However, these cases deal with sanctions available for violation of the discovery rules or a discovery order of the court. In the case at bar, the State did not violate any discovery orders. Thus, these cases are inapplicable, and the proper analysis is whether due process was violated. *See also Peo-*

*ple v. Koutsakis*, 255 Ill.App.3d 306, 194 Ill.Dec. 272, 276, 627 N.E.2d 388, 392 (1993) (finding that the bad faith requirement of *Youngblood* is not applicable where State violated a discovery order; rather, sanctions for discovery violations are appropriate).

4. Rita makes a one-paragraph argument that the seizure of his automobile violated his Fourth Amendment right against unreasonable seizures. Given the absence of cogent argument on this issue, we do not address it further.

N.E.2d at 714. An amendment after this thirty day period is subject to I.C. § 35–34–1–5(d), which provides:

> Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare his defense.

The original information charged Rita as follows:

> On or about the 13th day of November, 1993, in St. Joseph County, State of Indiana, John G. Rita did drive a vehicle that was involved in an accident that resulted in the death of another, to-wit: when the vehicle driven by John G. Rita struck a pedestrian, Mara Fox, that resulted in the death of Mara Fox, and said defendant failed to stop the vehicle at the scene of said accident, or as close as possible thereto, and said defendant did fail to remain at the scene of the accident and provide his name, address, vehicle registration number and to determine the need for reasonable assistance to Mara Fox, who was mortally injured in the accident.

(R. 13). After the first trial, the State amended the information as follows, with the added words emphasized:

> On or about the 13th day of November, 1993, in St. Joseph County, State of Indiana, John G. Rita did drive a vehicle that was involved in an accident that resulted in the death of another, to-wit: when the vehicle driven by John G. Rita struck a pedestrian, Mara Fox, that resulted in the death of Mara Fox, and said defendant failed to stop the vehicle at the scene of said accident, or as close as possible thereto, and did fail to *return to and* remain at the scene of the accident and provide his name, address, vehicle regis-

tration number and to determine the need for *and render* reasonable assistance to Mara Fox, who was mortally injured in the accident.

(R. 568).

The driver of a vehicle involved in an accident that results in the injury or death of a person shall do the following:

> (1) Immediately stop the vehicle at the scene of the accident or as close to the accident as possible in a manner that does not obstruct traffic more than is necessary.
>
> (2) Immediately return to and remain at the scene of the accident until the driver does the following:
>
> . . . .
>
> (C) Determines the need for and renders reasonable assistance to each person injured in the accident, including the removal or the making of arrangements for the removal of each injured person to a physician or hospital for medical treatment.

I.C. § 9–26–1–1(1), (2). Failure to comply with either of these two sections is a class D felony if the accident involves serious bodily injury to or the death of a person. I.C. § 9–26–1–8.[5]

Our conclusion that the amendment here was permissible is twofold. First, we conclude that the amendment does not change the theory of the case or the identity of the offense charged. The added language does not change the offense charged, but merely tracks the statutory language more closely. Rita was clearly informed that he was charged with leaving the scene of a fatal accident, and he has failed to show that he was misled or that a viable defense became unavailable after the information was amended. Because the amendment was not essential to make a valid charge of the crime of leaving the scene of a fatal accident, it was not an amendment of substance. *See Sharp,* 534 N.E.2d at 714. We find the amendment permissible.

 Secondly, even assuming that the amendment was substantive and changed the

---

**5.** I.C. § 9–26–1–1 also has two other sections, (3) requiring the driver to immediately give notice of the accident to the police, and (4) requiring a written report to be filed with the state police within ten days of the accident. Violation of (3) is a Class C misdemeanor; violation of (4) may result in the revocation or suspension of the driver's license.

theory of the case, we find no reversible error. In *State v. Gullion*, 546 N.E.2d 121 (Ind.Ct.App.1989), the State made a substantive amendment by adding a fourth count after the time limit of I.C. § 35–34–1–5(b) had expired. On appeal, the court concluded that, under appropriate circumstances, such an amendment was permissible. In its determination, the court first observed that the legislature had repealed the former subsection (e) to the statute, which had specifically prohibited an amendment changing the theory of the prosecution or the identity of the offense charged. Prior to this repeal, the supreme court had observed: "[W]e are at a loss to understand why the State should not be entitled to amend charges, even as to theory and identity, as we understand such terms, when it can be done without prejudicing the substantial rights of the accused." *Id.* at 122, quoting *Trotter v. State*, 429 N.E.2d 637, 640–41 (Ind.1981). Noting that the legislature left intact I.C. § 35–34–1–5(d), requiring notice and an opportunity to be heard before any amendment other than one under subsection (b), the court in *Gullion* stated:

> Reading this statute and considering its history, we believe the legislative intent was to allow the amendment of a criminal charge when, in the trial court's discretion, the amendment could be permitted under such terms that would accord the defendant adequate opportunity to prepare his defense.

> *To hold that this statute does not permit charges to be amended for other than form anytime after 30 days prior to the omnibus date would make subsection d superfluous.* The question raised by the Supreme Court in *Trotter* would still be unanswered.

> Requiring the State to dismiss and refile a new charge would exalt form over substance. Such a requirement would cause additional and unnecessary preparation of pleadings and court hearings, possibly resulting in further delay of the trial. It might cause additional inconvenience and expense for the defendant such as reposting of bond, added attorney's fees and more publicity.

> The trial judge can set time limits in such a manner as to be fair to the defendant. Under the circumstances in this case, allowing the State to amend the charges, giving the defendant adequate notice and hearing on the amendment, advising the defendant of the amendment and consequences therefore and allowing a continuance, if requested, would appear to be consistent with the legislative intent.

*Id.* at 123 (emphasis added). This view was adopted in *Todd v. State*, 566 N.E.2d 67 (Ind.Ct.App.1991), where the original information charging a refusal of the implied consent chemical test was amended on the morning of trial to add the charge of operating a vehicle while intoxicated. The court held that, while the additional charge would change the theory of the case, the trial court could properly allow an amendment of a substantive character under such terms as would preserve the defendant's basic rights to reasonable notice and an opportunity to be heard and contest the charges. *Id.* at 69. As the record indicated that the defendant's substantial rights had not been prejudiced, the court found no error in permitting the State to amend the information. *See Davis v. State*, 580 N.E.2d 326 (Ind.Ct.App.1991) (citing *Gullion* and *Todd* in determining whether the defendant received adequate notice of the amendment and opportunity to be heard); *see also Thacker v. State*, 556 N.E.2d 1315 (Ind.1990) (amendment during voir dire adding a second aggravating circumstance to death penalty count permitted under I.C. § 35–34–1–5(c) as defendant's substantial rights were not prejudiced due to the available time to develop strategy to contest the new allegation).

Here, Rita was afforded adequate notice of the amendment and the court held a hearing on the motion. Rita also has had ample time to prepare his defense, and the amendment does not create any new charges which he must face. Under these circumstances, Rita's substantial rights have not been prejudiced and we find no error.

**ISSUE III**

The final issue certified for our review is whether the trial court erred in granting the prosecutor's motion to issue in-

vestigatory subpoenas in order to take *ex parte* statements of witnesses while denying the defendant's similar motion. We find no error.

■■■ The trial court's authority to direct the discovery process is clear, but is tempered by a requirement for the appropriate exercise of discretion. *Grant v. State*, 623 N.E.2d 1090, 1094 (Ind.Ct.App.1993), *reh'g denied, trans. denied.* We will reverse only upon a showing of an abuse of that discretion. *Id.*

The State moved the court to issue subpoenas to two witnesses who had refused to speak with the prosecution. In granting the State's request, the court relied upon I.C. § 33-14-1-3:

> Whenever any prosecuting or district attorney shall receive information of the commission of any felony or such district attorney of the commission of any misdemeanor he shall cause process to issue from a court having jurisdiction to issue the same, (except the circuit court,) to the proper officer, directing him to subpoena the persons therein named likely to be acquainted with the commission of such felony or misdemeanor, and shall examine any person so subpoenaed before such court touching such offense; and if the facts thus elicited are sufficient to establish a reasonable presumption of guilt against the party charged, said court shall cause so much of said testimony as amounts to a charge of a felony or misdemeanor to be reduced to writing and subscribed and sworn to by such witnesses, whereupon such court shall cause process to issue for the apprehension of the accused, as in other cases.

Rita objected to the trial court issuing investigative subpoenas permitting the prosecution to take *ex parte* statements of certain witnesses without granting the same right to the defense.[6] Rita contends that the statute applies only to pre-charge investigation and, once an information is filed, the power granted under the statute no longer applies.

While we acknowledge that the statute does appear to contemplate use of subpoena power before charges have been filed, nothing in the statute prohibits such use after charges are filed. In *Lee v. State*, 526 N.E.2d 963 (Ind.1988), *reh'g denied*, the court addressed a defendant's claim of error under this statute as follows:

> Appellant claims the trial court erred in that prior to trial the court in an *ex parte* proceeding granted the State's petition to issue subpoenas for certain witnesses pursuant to Ind.Code § 33-14-1-3. The obvious purpose of the statute is to permit the prosecuting attorney to proceed with an orderly investigation of crime and to furnish him with a device to obtain the presence of recalcitrant witnesses. This statute has been held not to violate the Fourth Amendment protections of the Constitution. *In re Thompson*, 479 N.E.2d 1344 (Ind.1985).
>
> In a related situation, this Court has held that pretrial depositions are not critical stages of a case requiring a defendant's presence. *Jones v. State*, 445 N.E.2d 98 (Ind.1983). In the case at bar, only one of the subpoenaed witnesses failed to testify at trial. All other witnesses did testify at trial and were subject to cross-examination at that time, thus affording appellant his right of confrontation. We hold that no reversible error occurred as a result of the issuance of the subpoenas.

*Lee*, 526 N.E.2d at 965-66.

■■■ While it is not entirely clear, it would appear that the subpoenas in *Lee* were issued after charges were filed but before trial. In any event, the supreme court emphasized that the purpose of the statute is to assist the prosecutor in fulfilling his or her duty to investigate crimes by providing a means of seeking unwilling witnesses. We cannot see how Rita has been prejudiced in this case. The procedures for issuing subpoenas for depositions, hearings and trials were available to him under Ind. Trial Rule 45, and Rita had the right to depose any witnesses. *Tinnin v. State*, 275 Ind. 203, 416

---

6. The court was clear that Rita had the right to discover any statements taken of the witnesses

subpoenaed by the prosecution.

N.E.2d 116, 118 (1981). The prosecution evidently issued subpoenas to four witnesses as a part of its continuing investigation and asked the court to enforce these subpoenas when two of those witnesses refused to speak with the State. Of the subpoenas enforced by the court, both witnesses testified at trial, thus affording Rita his right to confrontation. *See Lee,* 526 N.E.2d at 966. We find no error.

The cause is remanded for further proceedings consistent with this opinion.

STATON, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

As to Issue I, while I agree that the trial court did not err in refusing to exclude the State's evidence with respect to the broken windshield, I am unable to agree with the implication that prior case law from the United States Supreme Court and from this State creates an absolute "bad faith" requirement with respect to withheld or destroyed evidence. The basic case from which the principle seems to be drawn is *Arizona v. Youngblood* (1988) 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281. In that case, the court enunciated what may appear, on the surface, to be an absolute bad faith proof requirement. The bad faith element, as discussed in *Youngblood,* however, is defined within a context of whether the evidence is of such a nature as to make the State aware of its probable importance to the defense. The bad faith requirement does not depend, therefore, upon proof that the State had a culpable or evil motivation in withholding or destroying the evidence.

Furthermore, the Court in *Youngblood,* relied upon prior decisions which did not focus exclusively upon the absence of a showing of subjective bad faith, but focused also upon the lack of prejudice to the presentation of the defense. *Youngblood* notes that although reversal will not lie where the evidence *might* have aided the defense, a reversal is required where the exculpatory nature of the evidence is apparent to the State.[7]

Even if *Youngblood* were read to engraft an absolute subjective bad faith requirement, it is materially distinguishable from this case. In *Youngblood,* unlike the case before us, "the State did not attempt to make any use of the [evidence] in its own case in chief." 488 U.S. at 56, 109 S.Ct. at 336. Here, the State introduced the windshield and various photographs of it into evidence.

Indiana case law is not contrary to my reading of *Youngblood. McGowan v. State* (1992) Ind., 599 N.E.2d 589 contains an apparent exception or restriction upon an absolute duty of a defendant to establish subjective bad faith on the part of the police or the prosecution. If the evidence may reasonably be "expected to play a significant role in the suspect's defense" the evidence must be preserved. 599 N.E.2d at 594. It appears, therefore, that even absent proof of subjective bad faith (a difficult if not impossible evidentiary task in virtually all such cases), the destruction, material alteration or withholding of evidence may be so prejudicial as to require reversal. In *Smith v. State* (1992) Ind.App., 586 N.E.2d 890 the court declined to reverse not only because there was no showing of bad faith but principally because the defendant had not shown materiality or prejudice. In *Curry v. State* (1994) Ind.App., 643 N.E.2d 963, *trans. denied,* the court appropriately stated that *Youngblood* does not require reversal when the State fails to retain and preserve evidence which merely "might be of conceivable evidentiary significance". 643 N.E.2d at 978. Accordingly, it is my conclusion that either as a part of the bad faith analysis, or as a separate and distinct consideration, if the State knows or reasonably should know that particular evi-

---

7. It appears that the windshield was extracted from the vehicle only three days after the accident. Numerous subsequent communications between the defense and the prosecution clearly demonstrated that both parties were keenly aware that the windshield was "a very key piece of evidence". Record at 156, 199. It is not clear, however, that the State had reason to be aware of the crucial nature of the windshield *vis a vis* preparation of the defense, before the windshield was removed from the car. See *Arizona v. Youngblood, supra,* 488 U.S. at 56, 109 S.Ct. at 336–337, n. *.

dence is crucial to the defense, alteration, destruction, or withholding of that evidence risks reversal.

In the case before us, defendant has not demonstrated that degree of prejudice to the presentation of the defense as to justify dismissal of the charges. Although the windshield was removed from the vehicle abandoned by Rita, the windshield itself was tested and numerous photographs were available for inspection by defendant. The windshield itself was available at all times for examination and testing by defendant, as was the vehicle itself. The defense was at liberty to create a comparable test situation for the vehicle with a replacement windshield and under similar conditions as to time, weather, date etc. The defense was at liberty to subject the actual windshield to extensive examination and expert witness scrutiny. In light of all the circumstances, Rita has not demonstrated that his defense has been so prejudiced as to constitute a due process denial.

With respect to Issue II, it is my view that prior to the amendment of the charge defendant could only have been convicted of failing to immediately stop at the scene of the accident. This of course presupposes that the defendant was aware of, or should have been aware of, the occurrence at the time of the collision itself and not at some time subsequent thereto. In my estimation the amendment of the charge alters the nature of the charge in the sense that it contemplates a defendant who innocently leaves the immediate scene or is somehow prevented from stopping and only thereafter discovers that a collision occurred and fails to return to the scene. Nevertheless, I agree with the majority that the amendment here did not prejudice the substantial rights of Rita to fully and adequately prepare and present his defense.

As to Issue III, and notwithstanding *Lee v. State* (1988) Ind. 526 N.E.2d 963, *reh'g denied,* my reading of I.C. 33–14–1–3 compels the conclusion that its provisions are restricted to a pre-arrest, and therefore presumably to a pre-charge, situation. Although *Lee* extends application to any pre-trial subpoenas, the only case cited for authority involved a pre-charge, pre-arrest investigation. Although in my view, the trial court erred in using the statute as the basis for issuing the subpoenas, there is no cause for reversal.

The state could have achieved the same ex parte questioning of the witnesses by resort to Trial Rule 45 as made applicable to criminal proceedings by Criminal Rule 21. If such procedure had been utilized to compel deposition testimony, Rita would not have been entitled to be present nor would the ex parte nature of the deposition violate his right of confrontation. *Jones v. State* (1983) Ind., 445 N.E.2d 98. As observed by the majority, Rita had the right to depose the same witnesses in preparation of his defense and as further noted the two witnesses against whom the subpoenas were enforced testified at trial and were subject to cross examination. The error, if any, in utilizing I.C. 33–14–1–3 was harmless.

Subject to the observations herein made, I concur in the holding that the trial court, upon remand, may conduct such further proceedings as are appropriate in light of the decision.