**Stephen J. BAUGH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 83A01–9810–CR–369.**

Court of Appeals of Indiana.

Nov. 22, 1999.

Transfer Denied Jan. 19, 2000.

---

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, for appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

MATTINGLY, Judge

Stephen J. Baugh appeals his conviction, after a jury trial, of Child Molesting, a Class C felony. He raises one issue, which we restate as whether the trial court erred in declining to suppress Baugh's bank records which the State obtained from an Illinois bank by means of a subpoena duces tecum.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of October 8, 1996, Baugh went to the residence of thirteen-year-old K.B., his cousin's daughter. K.B. was home alone. Baugh intimidated K.B. into exposing her breasts and genitals so that Baugh could look at her. He also exposed his penis in front of K.B. At K.B.'s suggestion, Baugh took the girl to visit her mother at the truck stop where her mother worked as a waitress. They were at the restaurant for some time between 4:00 and 5:30 p.m. K.B. asked Baugh to take her to a friend's house but he declined, taking her home instead. After they returned to K.B.'s house, Baugh inserted his finger into K.B.'s vagina.

On December 20, 1996, Baugh was charged by information with Child Molesting as a Class C felony. On January 21, 1997, Baugh provided notice of an alibi defense, claiming he was in East Chicago and Dyer, a drive of some two and one-half hours from K.B.'s residence in Vermillion County, "at the time of the alleged acts." (R. at 26.) On November 17, 1997, the State amended its exhibit and witness list to include a check alleged to have been

written by Baugh on October 8, 1996, to a business in Chrisman, Illinois, approximately twenty minutes from the truck stop where K.B.'s mother worked. Shortly before November 1, 1997, the State had, apparently without notice to Baugh, obtained a subpoena duces tecum issued by the Vermillion Circuit Court and directed to Baugh's bank in Chrisman, Illinois, requesting copies of Baugh's bank records. Representatives of the State then went to Baugh's bank and produced the Indiana subpoena duces tecum. The bank divulged Baugh's banking records, including information relative to the check of October 8, 1996. The trial court denied Baugh's motion to suppress all evidence arising from the warrantless seizure of his bank records.

## DISCUSSION AND DECISION

■ Baugh argues that the subpoena duces tecum was improperly used to obtain his bank records. We agree.[1] The subpoena duces tecum was issued by the Vermillion Circuit Court after Baugh had been indicted. Baugh did not receive notice that the subpoena had been issued, nor did he receive a copy of that subpoena.[2] The subpoena duces tecum was, as a result, ex parte and not permissible subsequent to an indictment or information.

In *Rita v. State*, 674 N.E.2d 968, 970–71 (Ind.1996), our supreme court addressed Ind.Code § 33–14–1–3, which allows prosecuting attorneys to subpoena witnesses in order to determine whether a prosecution should be initiated. At Rita's trial the State argued that the statute permitted the prosecution, but not the defense, to take ex parte statements from witnesses even after a prosecution had been initiated. On appeal, this court agreed, noting that the purpose of the statute is to "assist the prosecutor in his or her duty to investigate crimes by providing a means of seeking unwilling witnesses." *Rita v. State*, 663 N.E.2d 1201, 1208 (Ind.Ct.App.1996), *rev'd*, 674 N.E.2d 968 (Ind.1996).

In reversing, our supreme court held that the statute, by its own terms, applied only to pre-charge interrogations and did not permit post-indictment ex parte discovery. 674 N.E.2d at 970. It noted that "[p]ermitting one side but not the other to question prospective witnesses in an ex parte format flies in the face of reciprocal discovery rights secured by the Indiana Trial Rules[.]" *Id.*

Even though that statute addresses subpoenas of witnesses, we find the reasoning in *Rita* equally applicable to the issuance of a post-indictment ex parte subpoena duces tecum. As a result, the State's use of a post-indictment ex parte subpoena duces tecum to obtain Baugh's bank records was improper.

■ Because the State improperly obtained Baugh's bank account records, that evidence should have been excluded at the trial. However, we believe the trial court's error in allowing the presentation of this evidence to the jury was harmless. A trial court has broad discretion in determining the admissibility of evidence and its deter-

---

1. Baugh argues in the alternative that, under Article I, § 11 of the Indiana Constitution, the State is obliged to obtain a search warrant before seizing a person's bank records. Because we find that the State failed to comply with the rules of discovery, we do not address the constitutional privacy issues Baugh raises.

2. While Baugh might not have had notice that the subpoena for the check had been issued, he did have notice that the State intended to introduce a copy of the check and testimony from a bank employee about checks written on Baugh's account. The State's Supplemental Discovery Response which was filed on November 17, 1997 and served on Baugh's counsel on that date indicated the State anticipated introducing into evidence "a microfish [sic] copy of an October 8, 1996 check written upon the checking account of Stephen Baugh at the State Bank of Chrisman, Illinois," as well as testimony by employees of the bank and of the store where the check was written. (R. at 94.) On January 7, 1998, Baugh's counsel submitted an amended witness and exhibit list which indicated Baugh might offer into evidence the original check written by Baugh to the store. (R. at 99.)

mination will not be reversed on appeal absent a showing of abuse of discretion. *Bacher v. State*, 686 N.E.2d 791, 795 (Ind. 1997). Even where there is error in the admission of evidence, the error will be disregarded as harmless if the probable impact of the evidence on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of a party. *Id.*

Baugh's substantial rights were not affected by the admission of the check. In *Rita*, the court noted that the State's questioning of the witnesses took place outside the presence of either Rita or his attorney, and deprived the defense of any opportunity for cross-examination. 674 N.E.2d at 971. The State's actions in Baugh's case do not involve the same type and extent of violation of the "reciprocal discovery rights secured by the Indiana Trial Rules," *id.* at 970, which were found improper in *Rita*. Baugh was made aware well in advance of trial that the State might introduce into evidence a copy of the check and testimony about it. In *Rita*, the defendant sought but was denied the opportunity to conduct similar ex parte interviews of the witnesses prior to trial and was unable to cross-examine the witnesses at the State's interview. Here, by contrast, the evidence at issue—Baugh's bank records—was equally available, if not more readily available, to Baugh.

Furthermore, the error in allowing into evidence Baugh's bank account records was harmless because that evidence was merely cumulative. The bank account records, as well as the testimony of the bank's representative, were offered by the State to rebut the alibi witnesses Baugh presented. The State presented, in addition to the bank records, testimony by the victim identifying Baugh as the person who molested her. K.B.'s mother testified that Baugh and K.B. visited her that afternoon in Vermillion County at the restaurant where she worked, and two other witnesses also testified that they saw Baugh and the victim together at that restaurant on the date of the crime. Almost all of Baugh's alibi witnesses were members of Baugh's family. The only alibi witness who was not related to Baugh testified that she saw Baugh at a restaurant in Hammond on October 8 but did not specify the time of day when she saw him. In light of the substantial evidence offered by the State that Baugh was in Vermillion County and with the victim on the afternoon of the crime, the admission of Baugh's bank records corroborating that evidence was harmless error and does not require reversal. *See Williams v. State*, 433 N.E.2d 769, 773 (Ind.1982) (improper admission of physical evidence including a gun, bullets and shell casing in an attempted murder trial was harmless error in light of the victim's identification of the defendant at trial, his description of the defendant immediately after the crime, and his identification of the defendant from a display of photographs presented to the victim at the hospital).

Affirmed.

RILEY, J., concurs.

SULLIVAN, J., concurring with opinion.

SULLIVAN, Judge, concurring.

I am unable to apply the holding of *Rita v. State* (1996) Ind., 674 N.E.2d 968 to the facts before us, as readily as does the majority.

Certainly, the *Rita* court drew a meaningful and determinative distinction between pre-charge subpoenas and post-indictment or post-information discovery activities by the State. It did so, however, in the context of a subpoena for witnesses as opposed to a subpoena duces tecum for a document. The protective rationale which prompted the *Rita* result was the unfairness of "[p]ermitting one side but not the other to question prospective witnesses in an ex parte format...." 674 N.E.2d at 970.

That protection does not seem necessary when a document is the only subject of a

subpoena. The document cannot itself be cross examined and, therefore, the reciprocal discovery rights involved in *Rita* are not jeopardized.

To the extent that the subpoena duces tecum here involved only the October 8 check written by Baugh, I do not find, in *Rita*, the answer to our question. To the extent, however, that the subpoena led to a questioning of employees of the bank and of the store where the check was written and who were anticipated to be called as witnesses, I agree that such "evidence" was improperly obtained.

With regard to the check itself, and although I do not find *Rita* controlling as to that matter, I agree with the majority that the error, if any,[3] was harmless in light of the substantial evidence of guilt.

---

**3.** It is my view that bank depositors may entertain a justifiable belief that their records will be treated with confidentiality and will not be randomly accessible to persons claiming the "need to know."

As stated in *Boyd v. United States* (1886) 116 U.S. 616, 622, 6 S.Ct. 524, 528, 29 L.Ed. 746 there is a prohibition against "compulsory production of a man's private papers to establish a criminal charge against him."

Nevertheless, since that time, a majority of the United States Supreme Court, despite two forceful dissents, has concluded that such records as canceled checks are not the private papers of the depositor for he can assert neither ownership nor possession. Instead, they are the business records of the banks. *United States v. Miller* (1976) 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71. *Miller* was followed by this court in *Cox v. State* (1979), 181 Ind.App. 476, 392 N.E.2d 496.